# 26-341

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

**Docket No. 26-341**

ENTESAR OSMAN KASHEF, TURJUMAN RAMADAN ADAM, ABULGASIM SULEMAN ABDALLA,

*Plaintiffs-Appellees,*

ALFADEL MOSABAL, ABUBAKAR ABAKAR, SIAMA ABDELNABI HAMAD, ABBO AHMED ABAKAR, HAWA MOHAMED OMAR, FATIMA ABDALLA ABDELRAHMAN, NYANRIAK TINGLOTH, REVEREND ANDERIA LUAL, NICOLAS HAKIM LUKUDU, JOHNMARK MAJUC, JOSEPH JOK, HALIMA SAMUEL KHALIFA, AMBROSE MARTIN ULAU,

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR UNITED STATES AS AMICUS CURIAE

JAY CLAYTON,
*United States Attorney for the Southern District of New York, Attorney for the United States.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2703

BENJAMIN H. TORRANCE,
*Assistant United States Attorney, Of Counsel.*

SANDI (SUNDAY) GEORGARI MARJAN, SHAFIKA G. HASSAN, JANE ROE, CLARA E. TABOR, SARA NOURELDIRZ ABDALLA, AMIR AHMED, ISAAC ALI, KUOL SHBUR, JUDY ROE, ESAMELDIN N. ABDELAZIZ, HAMDAN JUMA ABAKAR, ROSA BOL RING, ADIEL ABAKER ABDALLA, ARBAB KHAMIS KHATER, ISMAIL IDRIS ADAM, FATMA OMAR AHMED, HAWA ISMAIL, ADAM ABAKAR HISSEIN, ACHAN ACHOR DUMO, MONG PETER LAM, JACOB LOK GATKOUTH, MAHDI ALTIGANI ALNOUR, HAYDAR AHMED ABDALLA, MAHMOUD MOHAMED IBRAHIM, RABAB AHMED EL SAYED ADAM, HANADI ABAKER MOHAMED, AHMED JUMA AHMED, ATONG D DENG, ABDALLA MOHAMED IDRISS, MOHAMED OMER SALIH HASABO, OMAR BAHER SIBOURU, ADAM ABDELRAHMAN ISMAIL, ABDULMAJID A GAMAR, MUTAZ MOHAMED MAKI KOMI, GAFFAR HAMID ALI NOURELDEIN, NOHA GAFFER HAMID ALI, FATHIA YAGOUB ELNOUR BAKHAT, SADAM Y MOHAMED, KHALID SAYFELDIN KRAMELDIN, SALAH IBRAHIM AHMED, SOMIA ALI ALI, ABDELRAHMAN HASSAN AHMED, MOHAMED ADAM OSMAN MOHAMED, ELHADI HAROUN ADAM, YAHYA MUSA ABDALLA, ABDALRAHMAN OSMAN FADOUL, ABDELKARIM MOUSA OMAR, KUIER AGUER ATEMDENG, SAID ABOBAKAR AHMED ABDALA, ABDELRAZIQ MUSA HUSSEIN, MUSTAFA ALNOR, MOHAMED I ABOH, ALI OMER AMIR TAGAL, IBRAHIM FADL JUMAA, ABBAS KHAMIS HAROON, ZEINAB ABBU, YOUNES OMAR ADAM, IBRAHIM FADEL HUSSEIN, KALTHOUM ARBAB MUSA, MUSA S ADAM, ABDULATIF ISAAK, MARYAM BABO, BABIKER ABDALLA ISAAC, IBRAHIM ALNOR JUMA, ABOUD ISSA SALEH, OMER AMIR BAKHIT, NORELDIN ADAM OSMAN, EISA MOHAMED, IDRISS ADAM MOHAMED DAWOUD, ABDELAZIM ADAM AHMED ABDELMOULA, RAMADAN YAHAI HAROUN, ABDUSHAFAIE ABUBAKER AHMED, NAWAL ABAKR, MUSA MOHAMED AHMED, MUSTAFA ISAAC MOHAMMED, HAROUN MOHAMED IDRIS, ABDALLA OMER AMIR, HALEEMA HARSWON ABDALLA, ABDELGADIR MOHAMED ABBAKER, MUSA BABIKER ALI HUSSEIN, ABDELKARIM MOHAMED TOGOL B BAKHIT, MOHAMED ABDALLA MOHAMUD, HASSEN A MOHAMED ISMAEL ISMAEL, YAKOUB A YAKOUB, SALEH MOHAMED AHMED, YAGOUB OMER ELSHEIKH, SHADIA MOKHTAR HAMAD ABDELRHAMAN, ISMAIL ABBAS, MARIA ADAM SALIH, JAMES THON ALEER, MALUAL MANYOK DENG

DUOT, AMIR SULEIMAN SHAWKAR, YOR CHOL YOR, MORWEL MATHIANG DENG, THON MAJAK DENG, ISHAG OTHMAN ADAM AHMED, SULEIMAN MOHAMED SALEH, JOSEPH AJEO MOILINGA, KRISTENA PETER RUFAEL, ELAF RUFAEL, NOURELDIN MAHDI ABDALLA ELTOM, ARBAB ABDALLAH ADAM, MOUSTAPHA IBRAHIM MAHAMAT, SAMIA ARBAB ABDURHAMAN, HAMRA IBRAHIM FADOUL, DJOUMA ARBAB ADAM, MATAR MAKINE ABAKAR, YAKUB HAROUN ABDULMOLA, HALEIMA NASRALDEN ABDELMAWLA SHERF, YAHYA KHAMIS, ANWAR HAMED ELNOUR, HASSAN HADO IBRAHIM HASSAN, YOUNESS HASSAN, MOHAMED ADAM ABDALLAH, ABDU MOHAMED, AHMED ARGA BAKHIT, MOHAMMED DAUD ARBAB, ADAM BABKER IBRAHIM, MOHAMED ISHAG, ADAM ZAKARIA JUMA, MARIAM Y. YAKHOUB, SALIH MOHAMED EISSA, SAMIA ABDELRAHMAN, ABDELRAHMAN ADELKARIM, ADAM ABDALLAH BAKHAT, IDRIS ABDULRASUL ADEM, BUSH ZAKARIYA MOHAMMED, EHSSAN ALTAHIR SABIL, IBRAHIM MOHAMMED ADAM, MUBARAK OMAR WADI, JUMA SEIF SHAIBU, ABDELRAZIG ADAM DAHIYA, ABDULKARIM ALI IBRAHIM, AKUEIN AWAN KUETH, AMIRA EL DENG, HOUZAIFA AHMED, AISHA ADAM ABUBAKAR, NADIA YAKUB, DAVID MATTHEWS GERI-ORIMATEO, ZARA IBRAHIM MAHAMAT, ABDELRAHIM OSMAN BASHIR HASSAN, ADAM ABDELKARIM ADAM HAROUN, MUBARAK A. MOHAMED, MARY DENG, KALTUM JUMA ZACHARIA, MONA OSMAN ABDELRAHMAN HASSAN, SULEIMAN ABDALLA ISMAIL, LAILA IBRAHIM ABBAKER, MOHAMED IBRAHIM AHMED, RODA ABDALLA SULEIMAN, ZUHAL FADL, ABDELKARIM ADAM ADAM AHMED MUSA, ADAM AHMED ABUBAKAR, JOHN ALIER LEEK YEN, ABDULKARIM AZARAK AHMED, DAVID BUOTH, ABDELMONEIM MOHAMED KORSI, AKOL CITHEC MACAR AKOL, FATIMA M. ABDELLA, ABELWAHAB GUMAA, SHAMS ELDIN ADAM, ELNAKHEIL BASHA DARA, MICHAEL PETER ABA, MAYEN THON DENG AYUEL, IBRAHIMA ADAMOU, VIOLA PAUL, AHMED TOM ABDALLA SAIEED, YAIA ABAKAR ABRAHIM, VIOLA JOHN DIRI JOSEPH, RAMSEY RENBY SEBIT, AHMED SAIEED, ADAM MOHAMED IBRAHIM, ABBASS AWAD ADAM ALI, NUR AL HUDA ABUBAKAR, NYAKOACH PETER LAM, HEIDER ABULGASIM SULEIMAN, CLEMENT JOSEPH WANI MOJUS, ADIER M KUDUM AWEL KWAI, HATIM ABDALLA ADAM, ABDELGABAR MOHAMED MOHAMEDIAN,

LUAL RIAK MARIER ADEIM, REBECCA NYAKOTA NYOACH, LAM THOT MUANG, SAMUEL MATHIONG REEC, TABESA AKON YUOL, GUOT KARLO KEN, ALI ABAKER HASSAN, BUOL MAYEN JOK, LEWIS ALFRED UTU BARUD, ADAM KHAMS ARBAB, MOHAMED ISSA SULIMAN ABDALLA, NYADUOP PETER LAM, NYABEL LAM THOT, MOHAMED ABBASHER MHDI, DENG DENG REYAK, ADAM HARI OMER ABU, GATLUAK PETER LAM, DENG YEL AKOL DENG, YUSSIF MOHAMMED SABIL, SALAH BAKHET BAKHET, NYBOL DENG REYAK, AHMED M ABKER, MUSA MOHAMED ARJA, MOUSSA BABIKIR ABAKAR, MAYSA OSMAN ARBAB, NOORELDIN OMER ALI, HAROON A BATI, ABDALLA SULIMAN ABAKAR, IZZELDIN SALEH AHMAD IBRAHIM, HAROUN HASSAN, DIYO JOK, IBRAHIM ADAM HASSAN, MAHASIN ELNOUR ADAM, ABDELMALIK HUSSEIN YAAKOUB, MOUSSA TEJEDDINE MOHAM AHMAD, RASHIDA HAMED AHMED BALLAH, ADAM JUMAA ARBAB, SOULEYMAN ABDELKERIM MAHAMAD, MICHAEL ADUUT PARENG, MARY JOHN DERY JOSEPH, NASRIN ANGLO MOHAMED, ZAHRA MOUSSA, DIING RING DIING YOL, FLORA AVURU, RODA LOGA, SABIT BARAKENYI KUBARI, AMEER AJAK NYHAL, NASIR KABASHI NASIR, IBRAHIM BAKHAT, AHMED ADAM ARBAB, YOUSIF KHALIL SULIMAN, JOSEPH G GAMUNDE, ISMAIL ISAAK ADAM, MUNAZIR ABDULLAH BAKHIET, GABRIEL CHARLES RIAK, CHARITY LOWOH, AMNA MOHAMED HASSAN KHALIFA, SAMYA A. HARAN, JAMES KADIN, ABDALLAH OMAR IBRAHIM, ISHAG ADAM GUMA MOHAMED, ADAM YACOB HAMID, ZEINAB AHMED MUSA ABBAS, KAMAL ADAM ABDULRAHMAN, MOHAMMED DABIYO ADAM, BABIKER ISMAEL ABDAHMMLLAH ELNOUR, ESTER PETER BEYAL LUWAL, MAWADA IBRAHIM ALI BAKHAT, IBRAHIM A ALI, MALKA ADAM ARBAB, KALTOUM FADUL MUSTAFA, KHALID MOHAMED ALI, DUAL D LUAL, ADAM ABAKER ABDALLA, ABDLAZIZ ALI YAGOUB, TIMANE ISSA WAR, JAMES AYUEL REHAN, ISRAA IBRAHIM AHMED, SAMIA ABUBAKER ABDALLA MOHAMED, AHMAD ALI ASHEKH, ALSADK HASSAN ADAM, ABUBAKR ALDOUM ADAM MUSA, MANAHIL IBRAHIM ALI, SANTINO RIAK AKUEI AJAK, MOHAMED IBRAHIM KAMBAL, YOUNES SALEM OMAR, SUKRAH M ELDHAI, ISMAIL MOHAMED ABDELMULLA, ABUBAKAR ALI ZAKARIA, MAHAMAT IBRAHIM ARBAB, JAKLIEN FARAH, AHMED A ISAAK, ASMA M HUSSEIN, ELNOUR HAROUN

BABIKER ALI ELRASHID, MONIKA MAKUER MAJOK DOMINIC, MAYOM RIAK MABOR, LORANS OUJIT LOUAL, ANESA SIMON AJEUTH, FANNE ABDELNABI, ABBAS KAMSOR IBRAHIM, YACUOB ADAM OUMAR, ABDALLAH MOHAMMED HASSABANABI, USMAN ARBAB SULAEMAN, NOEL JADA LAKO, JAFAR HARRY JUMMA HASAPALLH, KHALID KHATER MOHAMED ALI, ALSADIG J SABIL, NEHAL GIBREIL, MAWAHIB ABBO, MOHAMEDALMURTADA H ABDALLA, MUSA YAGOUB, YOUNIS MOHAMED MOHAMED, AMONAH ISMAEL, MAHMOUD HAMED ISSA, ABDULRAHMAN ABAKAR, TAGWA IBRAHIM YAHYA, MOHUSSIN ABAKAR, ABDULRASUL ADAM AHMED, AMAN MIHEMEED, YAHIA ADAM SHOGAR ATIA, MOHAMED ISMAIL YOUSIF, DAHIYA YACUB ADAM, MOHAMED AHMED MOHAMED, MALIK KHATAR MALIK, DOW HUSSIEN GASIM, ABDELAZIZ BAKHEIT, HABALDEEN ADAM HASSAN IDREES, YOSEF MOHAMED BAKHAT ABDALLA, ABDULRAHMAN ALNOUR GONGE, FATIMA TEGANI ALI, REMAZ ADAM, AHMED ALSADIG MOHAMED ABDELKARIM, MARIAM OMER KHAMIS, BUTHAINA A AHMED, MAGDI NOURALDIN YOUSF IBRAHIM, BUTRUS ALDO GWAKE LAZARUS, ANNA SERENO MODI, MARTHA AGUEK JOK, ADIL BASHAR ALI ADAM, SALAH MOHAMED KHATER AHMED, REBECCA ATHIENG DENG, YOUSIF MOHAMED, YAHYA ABDALLA JUMAA, ACHOL A AJAK, RHODA YAR ALIER, MOHAMMED KAMALELDIN HAMAH ALI, LUETH M YAK, ADAM ISMAIL MOHAMMED OMER, HAMADI YOUNIS AHMED ADAM, FADLALLA ADAM IBRAHEM MOHAMMED, YASIR RIZIG HASSAN, FATHIYA ABDELDAYIM, EMADALDEEN ALI SWAR BASHIR, MICHAEL M DUT, AMILIYA S DORI, ABDELRAZIG GUMA SULIMAN MOHAMED, NAMAT OSMAN YAGOUB, SALADIN AHMAT HAROUN, MUBARAK ABAKAR MOHMMED, ADAM YAHYA OMAR, SAFIYA AHMAT HAROUN, AWATIF IBRAHIM ISSA, MONIR AHMED ABDALLA, ADAM MOHAMED ABDALLA AHMED, HASSAN ISSACK ABDALLA, DFAALLA BASHIR DFAALLA, MOAWIA ABDELRAHMAN I. ABOH, EBTESAM OSMAN, BASHIR D IDRISS, FAIZA SABIL MOHAMED, SAMUEL GUYA LOBURI, GAFAR IBRAHIM YAGOUB, NABEEL A KHAMIS, MUTASIM IBRAHIM ABDALLA MOHAMMED, MONICA H TIMON, MAGDI YAHIA YUNIS, IBRIS AMIN, KARIMA ABRAHIM, ALGEZAFEE MOHAMED HAMID HAMID, ZAINAB BABIKER ABDELMA HASSAN, ZAHARA MOHAMED

HUSSEIN, AGOK K GARANG, MOHIELDIN DAWED OMER, ROSE NAJORE HALISTO, NOURALDEIN ABAKER HOSS BAKHT, MOHMOUD IBRAHIM ABDULRAZIG, ABDALLAH ADAM TAHIR ADAM, HAMDI IBRAHIM AMIR, SULIMAN ADAM, MUBARAK YAGOUB IBRAHIM RAHMA, MUSTAFA MOHAMMED ALI, OMER ADAM OMAR, AHMED IBRAHIM YUSUF, HUSSIEN BASHIR HAROUN ADAM, RASHID HUSSEIN YOUNIS IBRAHIM, NOURDINIE MAHAMAD YUNIS, GAMAL ADAM YAGOUB HASSAN, MADIBO ADAM HASSABLLAH MADIBO, SALAHELDIN IDRIS YOUNIS SENIEN, AMER MOHAMMED BAKHT MENAWY, ADAM A IBRAHIM, NYANTHIEC JAM AWEL, NORALDIEM AHMED ISMAIL, LADO YANGA JURKIN, MUNA YAQOUB MOHAMED, AHMED ABDULRASOUL MOH MATAR, BAHARELDIN MOHAMMAD OMER ABDALLA, ABDU NORAIN MOHAMED, MUOTASIM MUSA ALSAFI, MAHSIM ABAKAR ISMAIL, MOHAMMED H KHATER, AUAR IBRAHIM YAHYA, KHALED OSMAN, YONIES HASSAN, ABDALLAH ALI ELNOUR, JUR KUCHA, MOHAMMED IBRAHIM, HANAN MUSA TAGAL, ABDALKARIM ADAM MOHAMMED IZZALDIN, KAMAL AHMAD MAHMOUD, MARY ABIECH AKOON, ARBAB ISMAIL IBRAHIM, MOHAMED ADAM MOHAMED JUMA, MUSAB ARBAB, ZAHARA YEKISUK, MAHAMAD ISMAIL IBRAHIM, ADAM IBRAHIM ISMAIL, MONICA ALUEL AYUEN, MOHAMMED MAHMOUD WARA, EMAN ALI, ABOBAKER S IBRAHIM, ATIA KAFI KUJUR, ABUALGESEM A ABDALMOULA, IBRAHIM AHMED ALI, ABBAKAR EL SONOSI MOHAMED, JOHN MALWAL, MOHAMED O FADHL, YASSIEN DALEEL, MARY DAWOD L. LAKO, AMAN GAI GARANG DENG, AMNA KORASHY, EKALINO M AWOUR KUR, MAHMOUD ABDALLA ADAM ABDALLA, HAFIZ ABDULKARIM WADI, SAMUAL MUSA ABDALGADIR, MUBARAK SULIMAN RAHMA, YASMEEN MUSA ABELGADIR, ABDULRAZIK MAHDI, ABDELKARIM OSMAN HASSAN, BABIKER ABDALLA HAROUN ABDALLA, ABDALLAH ISHAG, ABDELBARI ELTIGANI M ADAM, ELSHAZLY RAHMA, ISMAIL AHMED ALNOUR, MANAL MUSA MUHAMED–AHMED, HASSAN AWAAD ABDALLAH, AMANI SHAREIF A. MOHAMED, MUTASIM A ALI AHMED, SAFA ALI ARBAB, AMIR ARBAB HASSAN MOHAMED, MOHAMED YAGOUB ADAM, ALI ADAM MOHAMMEDIN BHAR, HANAA AHMED ABAKER IBRAHIM, MAHGOUB ABDALLAH DAFALL KHDIR, EKRAM IBRAHIM HAMED, ABEER HAROUN MOHAMMED HASABALLAH,

SAYEDA ABDALRHMAN FASHIR, A. B., SAFA ALI IBRAHIM ABDELKARIM, ANDERIA AROK LUAL, SAIDA SHARAFEFLDIN MORSAL KHAMIS, ALI AHMED ELTAYIB ELFAKI, SADIYA M MOHAMED, MUSA ABDALWAHAB BABKER KAMAL, AHMED KHAMIS MOHAMED HAROUN, C. D., NYANGOK DANIEL DONGWAY, HAROUN HASSAN HAROUN, MAHA SABIR ABDALLA, ABUBAKAR IYDAM IBRAHIM MOHAMMED, SAMRA ABBAS IBRAHIM MOHAMMED, AZAHIR ALZAIN ADAM, KHALID HAROUN, ALSADIG SALIM TUKKA SABUN, ANDREW AKECH JOHN JOK, AWDIA AMIR ABDELBAGI, VICTORIA ADHAR AGUEK, ELTEGANI AHMED NHAR BERKA, YOSIF ABUALQASIM KHATIR OMER, SAMIA ALTOM TIBIN OMER, ZAINA HAMID GARELNAB ELTAHIR, SALIH INTISAR ABDELRAHMAN, GATAR GALIA HAMED ADAM, AHMED ISMAIL A. WADI, E. F., ATEM JOHN THUE AGUER, SAMIRA MOHAMMED ADAM IBRAHIM, FAISEL ABDURHMAN ADAM, OMDA A AHMED, ROSE BAGAZI LORI, MOHAMMED MOHAMMED AHMED, ZAKAREYA MOHAMED TARBOUSH, OMAR ABDELHAMEED, ALIET MALEK ALIER, TAHA HASSAN ISHAG, IBRAHIM A ISSA, AHMED ABDULKARIM WADI ISMAIL, AREK GARANG BAK LUAL, ZAKIA HAROUN SULYMAN ADAM, MAHMOUD MUKHTAR ELTAYB, OMAR HANDOGA KHATIR NAIR, ABDULLAH ABDULMAHMUOD ABDULMAHMUOD, ANWAR MOHAMMED DAFALLA, AHMED ADAM ELOMDA MOHAMED, AMINA OUSMAN IBRAHIM, AZIZA KHAMIS IBRAHIM, HAWA IBRAHIM JUMA HAROUN, SUMAIA IBRAHIM ALNOR JUMA, NOURACHAM OUMAR, ALTAYEB MUSTAFA ADAM WAR, BUTHAINA AMBADA, AMANI ABDALLA IBRAHIM, MOHAMMED ISMEIL JOMA MOHAMMED, ABUBAKAR ADAM OBAID BAKO, EMADALDEEN SULIMAN IBRAHIM, MAHMOUD ELRAYAH GUMAA, FAISAL ADAM IDRIS, MOUSAB TOGOL, KHALID ABAKER MUHAMED TAIRAB, ABDULAZIZ MOHAMMED ABDALLA, SIHAM ARBAB ABDALLAH, OSAM BAKHIT MUSA SAM, MUHIEDDIN ABELRAHMAN I. MAHMOUD, MOHYALDEEN ABDRHEEM ABAM ABAKAR, ACHOL GARANG AWUOL AKOIH, ABUK MATHIANG MADUT, HANADI ZAKARIYA IBRAHIM, GEHAD A ABDELRASOUL, MUNIRA HARON ALTOM MOUSA, AMEERA BASHEER HAROUN, HAITHAM ABUBAKAR ABDELMAILK, HAMED YAGOUB ADAM, NAJWA ADAM ISA JUBARA, OSMAN MAHAMED ISMAIL ABDELRAHMAN, MAHMOUD OMER ISSAK ADAM,

SALMA ABDELKARIM ALI, ABDELRAHMAN YAGOUB ABDELMALIK,

*Plaintiffs-Consolidated Plaintiffs,*

—v.—

BNP PARIBAS, a French corporation,

*Defendant-Appellant,*

BNP PARIBAS NORTH AMERICA, INC., a Delaware corporation, DOES 1–10, BNP PARIBAS, SA NEW YORK BRANCH, a foreign branch, BNP PARIBAS US WHOLESALE HOLDINGS, CORP., FKA BNP PARIBAS NORTH AMERICA, INC., a Delaware corporation,

*Defendants.*

## TABLE OF CONTENTS

PAGE

Interest of the United States . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiffs' Allegations and the District Court's Initial Determination of Swiss Law . . . . . . . . . . . . . . . . . . . . . . . . 2

B. The Swiss Ambassador's Letter to the District Court, and the Court's Further Consideration of Swiss Law . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The Swiss Government's Letter Regarding the Meaning of Swiss Law Is Entitled to Careful and Respectful Consideration . . . . . . . . . . . . . . 10

A. Principles Governing U.S. Courts' Determination of Foreign Law . . . . . . . . . . 10

B. The District Court Did Not Give the Swiss Government's Views the Respectful Consideration Required by the Supreme Court . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PAGE

**TABLE OF AUTHORITIES**

*Cases*:

*Animal Science Products v. Hebei Welcome Pharmaceutical Co.*, 585 U.S. 33 (2018) . . . . . . . . . . . . . . . 11, 12, 13, 15

*Bugliotti v. Republic of Argentina*, 952 F.3d 410 (2d Cir. 2020) . . . . . . . . . . . . . . . . . 11

*Church v. Hubbart*, 6 U.S. (2 Cranch) 187 (1804) . . . . . . . . . . . . . . . . 10

*Kashef v. BNP Paribas, S.A.*, No. 16 Civ. 3228, 2025 WL 2941595 (S.D.N.Y. Sept. 8, 2025) . . . . . . . . . . . . . . . 8, 9, 14

*Kashef v. BNP Paribas, S.A.*, No. 16 Civ. 3228, 2024 WL 1676355 (S.D.N.Y. Apr. 18, 2024) . . . . . . . . . . . . . . . . . . 4, 14

*Kashef v. BNP Paribas S.A.*, No. 16 Civ. 3228, 2021 WL 603290 (S.D.N.Y. Feb. 16, 2021) . . . . . . . . . . . . . . . . . 2, 3, 4

*Kashef v. BNP Paribas, S.A.*, 442 F. Supp. 3d 809 (S.D.N.Y. 2020) . . . . . . . . . 2, 3

*Kashef v. BNP Paribas, S.A.*, 925 F.3d 53 (2d Cir. 2019) . . . . . . . . . . . . . . *passim*

*Petersen Energía Inversora S.A.U. v. Argentine Republic*, 172 F.4th 120 (2d Cir. 2026) . . . . . . . . . . . . . . . . 12

PAGE

*Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Talbot v. Seeman*, 5 U.S. (1 Cranch) 1 (1801) . . . . . . . . . . . . . . . . . . . 10

*Rules*:

Federal Rule of Civil Procedure 44.1 . . . . . . . . . 10, 11

*Other Authorities*:

9A Wright & Miller's Federal Practice & Procedure § 2441 . . . . . . . . . . . . . . . . . . . . . . . . . 10

9A Wright & Miller's Federal Practice & Procedure § 2444 . . . . . . . . . . . . . . . . . . . . . . . . . 11

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**

**Docket No. 26-341**

---

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

---

### Interest of the United States

Victims of human rights abuses in Sudan brought this action against BNP Paribas, S.A. ("BNPP"), a French bank, contending that banking services BNPP provided to the Sudanese government were instrumental in enabling that government's genocidal acts against its own people. The district court held that Swiss law governs plaintiffs' claims, but interpreted that law in a manner contrary to a statement the Swiss government submitted to the court. A jury then returned a verdict in plaintiffs' favor.

The United States condemns the government-sponsored violence in Sudan and expresses its sympathy for its victims and their families. Nevertheless, the United States has a strong interest in ensuring that when a foreign state's government expresses a position as to the meaning of its own laws, that position is given respectful consideration by the judiciary. As the Supreme Court has held, international comity and respect for the sovereignty of foreign states require courts to carefully weigh a foreign government's

characterization of its legal rules—just as the United States would expect foreign courts to carefully consider our government's views if the situation were reversed. Here, however, the district court's analysis of the Swiss government's statement was cursory and failed to respond to important legal points. The district court's judgment should therefore be vacated, and this matter remanded for the court to give the Swiss government's analysis of Swiss law the careful and respectful consideration it requires. Alternatively, this Court may itself give respectful consideration to the Swiss government's views in reviewing the district court's interpretation of Swiss law.

## Statement of the Case

### A. Plaintiffs' Allegations and the District Court's Initial Determination of Swiss Law

As the district court explained, plaintiffs in this case "were victims of horrific human rights abuses undertaken by the Government of Sudan between 1997 and 2009." *Kashef v. BNP Paribas S.A.,* No. 16 Civ. 3228, 2021 WL 603290, at *1 (S.D.N.Y. Feb. 16, 2021). Both the U.S. Executive branch and the Congress responded to the atrocities in Sudan by imposing various sanctions. *Id.* BNPP, however, continued to provide banking services to the Sudanese government in violation of those sanctions, eventually leading to its plea of guilty to U.S. criminal charges. *Id.*; *accord Kashef v. BNP Paribas, S.A.*, 925 F.3d 53, 55 (2d Cir. 2019).

Plaintiffs then brought this civil action, alleging that BNPP's illicit practices "sustain[ed] the Sudanese regime and perpetuat[ed] the genocide." *Kashef v.*

*BNP Paribas, S.A.*, 442 F. Supp. 3d 809, 813 (S.D.N.Y. 2020). Plaintiffs, who now lawfully reside in the United States, allege that they suffered human rights abuses in Sudan at the hands of Sudan's government and militias. *Kashef*, 925 F.3d at 57. Their complaint asserts a variety of state-law torts, including claims that BNPP "conspired with or aided and abetted Sudan in its commission of battery" and other intentional torts. *Id.*

The district court (Alison J. Nathan, J.) initially dismissed the lawsuit under the act-of-state doctrine and as untimely, but this Court vacated that decision. *Kashef*, 925 F.3d at 55. On remand, the district court concluded that Swiss law governed, because the alleged "means by which BNPP helped Sudan evade American sanctions were conceived of and put into place in Switzerland" by BNPP's Swiss subsidiary, and Switzerland's interest thus outweighs any interests of New York, the United States, or Sudan. 442 F. Supp. 3d at 819–24.

The district court then considered the testimony of two experts in Swiss law—one proffered by each side in this litigation—to determine how that law would apply to the case. 2021 WL 603290, at *2. The experts agreed that "the operative provision of Swiss Law in this case is Article [50(1)] of the Swiss Code of Obligations,"[1] which provides for secondary tort liability. *Id.*

---

[1] The Swiss Code of Obligations is available in official English translation at https://perma.cc/Y85M-TZY5.

In the terminology of Article 50(1), plaintiffs alleged that BNPP was an "accomplice" and Sudan was a "perpetrator," and the experts agreed that the elements of liability require that "(1) a main perpetrator committed an illicit act, (2) the accomplice consciously assisted the perpetrator and knew or should have known that he was contributing to an illicit act, and (3) their culpable cooperation was the natural and adequate cause of the plaintiff's harm or loss." *Id.* (quotation marks omitted). On the second element, the court accepted the testimony of plaintiffs' expert and his explanation of Swiss case law, and concluded that to be liable, the accomplice must have known or should have known it was assisting the perpetrator and that its assistance was contributing to an illicit act, but it need not intend to assist that illicit act, and need only be negligent as to its contribution to tortious conduct. *Id.* at *3–5. As for the third element, the court held (as the experts agreed) that "natural" causation is similar to the U.S. concept of but-for causation, while "adequate" causation is similar to proximate causation. *Id.* at *6. The court further held, accepting the view of plaintiffs' expert, that to satisfy the adequate causation standard the result of an accomplice's contribution must be foreseeable, but the contribution need not necessarily be substantial. *Id.* at *7. Having made those rulings on the meaning of Swiss law, the court mostly denied BNPP's motion to dismiss the action. *Id.* at *9–10.

Following discovery, the district court (Alvin K. Hellerstein, J.) turned again to questions of Swiss law in denying BNPP's motion for summary judgment. *Kashef v. BNP Paribas, S.A.*, No. 16 Civ. 3228, 2024 WL 1676355 (S.D.N.Y. Apr. 18, 2024). The court

rejected BNPP's argument that it "cannot be culpable as an accomplice [under Swiss law] if the primary actor cannot be held [liable] as a tortfeasor," on the ground that this Court's earlier decision ruled that Sudan's genocidal acts violated *jus cogens* norms of international law. *Id.* at *2.[2] It further held that there was sufficient evidence of BNPP's conscious assistance of Sudan's illicit acts. *Id.* As for causation, the court held that there was sufficient evidence to show that BNPP's assistance to Sudan enabled the Sudanese government to gain revenue for its military operations. *Id.* at *3–4.

### B. The Swiss Ambassador's Letter to the District Court, and the Court's Further Consideration of Swiss Law

On September 2, 2025, one week before the start of trial, the Swiss ambassador to the United States filed a letter with the district court providing the views of the Swiss government on Swiss tort law. (Dist. Ct. ECF 937).

---

[2] This Court reached that conclusion in considering whether the act-of-state doctrine—which prohibits U.S. courts from declaring the official acts of a foreign sovereign to be invalid—applies to this case. 925 F.3d at 58. As part of its resolution of that question, the Court held that the doctrine does not apply to violations of *jus cogens* norms, namely, those norms of international law that are binding on all nations and from which no derogation is permitted. *Id.* at 61–62.

The Swiss government explained that "the actions of BNP Paribas that are the subject of this lawsuit were commercial transactions conducted from Switzerland that at the time were permissible under Swiss law. The lawsuit amounts to a claim for damages based on Plaintiffs' view that Switzerland (and all other countries) should have banned such transactions during the relevant time period. The lawsuit therefore constitutes a challenge to Swiss sovereignty, seeking to interfere with the ability of Switzerland to regulate the conduct of its own nationals within its own territory." (*Id.* at 2). The letter continued, expressing a concern "that Articles 41 and 50(1) of the Swiss Code of Obligations . . . are being interpreted in a manner that actually conflicts with Swiss law." (*Id.*). According to the Swiss government, if there is to be joint-and-several liability imposed on an accomplice under Article 50(1), the "main perpetrator" itself must be able to be held liable under Swiss tort law. (*Id.*). In turn, Article 41, the relevant source of primary liability, does not impose liability on foreign sovereigns, nor does it allow liability for acts outside of Switzerland. (*Id.*). Thus, the ambassador explained, because Sudan could not be held liable, BNPP also could not be held liable as its accomplice under Article 50(1). (*Id.*).

The Swiss government also offered several additional independent points of Swiss law regarding BNPP's potential liability. First, it stated that an accomplice must "conscious[ly] cooperat[e]" in a plaintiff's injury, i.e., provide "willful and substantial assistance to the unlawful act that injured the plaintiff at issue, not a generalized assistance to the perpetrator"; and there must be a "specific causal link" between the

defendant's conduct and the injury. (*Id.*). Thus the "bank's services" must be tied to the specific plaintiff's injuries for liability to attach. (*Id.*). Second, the Swiss government stated that for an accomplice's act to be the basis of liability, it must itself be unlawful under Swiss law; a violation of U.S. law or sanctions regulations would not suffice. (*Id.*). Third, the Swiss government wrote that the standard of proof for certain elements of liability must be "full conviction" or "strict proof," a standard higher than "preponderant likelihood." (*Id.* at 2–3). The Swiss government specifically cautioned that an interpretation of Swiss law "inconsistent with the above basic principles would result in the Court not applying Swiss law at all, but rather a new U.S. court-created law." (*Id.* at 3).

The district court addressed the ambassador's letter in an order issued the next day. (Dist. Ct. ECF 943). The district court began by affirming its "respect[ ]" for the ambassador and his views, but asserted that "it is the [district court's] duty to determine the law of Switzerland to be applied in the case over which it presides, and to instruct the jury as to that law," and pointed out that it had "written extensively about Swiss law." (*Id.* at 1). The court then noted that BNPP's Geneva branch "organized its activities, in Switzerland and elsewhere . . . to evade" U.S. and New York law, and that BNPP's criminal conviction demonstrated such violations. (*Id.* at 2). According to the court, Swiss law was to be applied by the jury to find if BNPP "consciously assisted the main perpetrator—the Government of Sudan—such that [BNPP] knew, or should have known, that [BNPP was] contributing to the illicit acts of the Sudanese government." (*Id.*). Thus, in

the district court's view, "[i]t is not relevant if [BNPP's] banking activities were permitted by Swiss law. The issue is whether [BNPP], through their banking activities and violations of federal and New York State laws, consciously assisted the Government of Sudan in performing its illicit activities." (*Id.*). The court next noted that Switzerland stated that Swiss law would not impose liability on a foreign sovereign, but gave that no weight since "this case will not impose liability on a foreign sovereign. [BNPP's] conscious assistance to that foreign sovereign is the issue, not the underlying liability of the foreign sovereign." (*Id.*).

In an order issued the following week, the district court addressed the burden of proof. *Kashef v. BNP Paribas, S.A.*, No. 16 Civ. 3228, 2025 WL 2941595 (S.D.N.Y. Sept. 8, 2025). Based on testimony from the parties' experts in Swiss law (although without discussing the letter from the Swiss ambassador), the district court ruled that the Swiss "preponderant likelihood" standard applies to all three elements of the claims: namely, the main perpetrator's commission of an illicit act; the accomplice's conscious assistance contributing to that illicit act; and the causal relationship between the accomplice's cooperation and plaintiffs' harm. *Id.* at *1–3. The district court concluded, based on plaintiffs' expert's testimony and its own interpretation of Swiss law, that the "preponderant likelihood" standard means that there must be "compelling reasons supporting the accuracy of the allegation, without other possible explanations being of substantial importance or reasonably likely." *Id.* at *3 (quotation marks omitted).

Trial began on September 9, 2025, and on October 17 the jury returned a verdict for plaintiffs. At a post-trial hearing in January 2026, at which BNPP cited (but the district court did not directly address) Switzerland's letter, the district court considered questions of Swiss law one final time. (Dist. Ct. ECF 1087). It held that the "government of Sudan committed an illicit act"; that BNPP, as an accomplice, "consciously assisted the perpetrator" as found by the jury; and that "culpable cooperation was the natural and adequate cause of the plaintiffs' harm or loss." (*Id.* at 17–18 (quotation marks omitted)). This was, the district court held, sufficient for liability under Article 50(1) of the Swiss Code of Obligations. (*Id.*). The district court noted the expert testimony relied on in its 2021 decision, stating that Article 50(1) liability attaches even if the accomplice does not meet all elements of primary tort liability (under Article 41). (*Id.* at 17–19). If the accomplice makes a "knowing, reckless, or careless contribution to the unlawful act of the principal," it is liable, even if the principal cannot be sued; thus, Sudan's immunity is "academic." (*Id.* at 19–20). Regarding the burden of proof, the district court declined to revisit its earlier decision concerning whether the "preponderant likelihood" standard applied or the meaning of that standard. (*Id.* at 54–55).

## ARGUMENT

### The Swiss Government's Letter Regarding the Meaning of Swiss Law Is Entitled to Careful and Respectful Consideration

When a district court considers an issue governed by the law of a foreign state, it must determine the meaning of that law—just as it would with the law of the United States or a U.S. state. In doing so, it may consider a wide array of sources. One of those sources may be views presented by the government of the foreign state at issue. While the court is not bound to follow a foreign government's articulation of its law, the Supreme Court has required courts to accord such views careful and respectful consideration. The district court failed to do so in this case. Accordingly, its judgment should be vacated and the case remanded for the court to properly consider the Swiss government's characterization of its own law. In the alternative, it would be appropriate for this Court to take up that analysis itself in reviewing de novo the district court's interpretation of Swiss law.

### A. Principles Governing U.S. Courts' Determination of Foreign Law

At common law, the content of foreign law was considered a question of fact. *Talbot v. Seeman*, 5 U.S. (1 Cranch) 1, 38 (1801); *Church v. Hubbart*, 6 U.S. (2 Cranch) 187, 236 (1804). But the 1966 adoption of Federal Rule of Civil Procedure 44.1 "sound[ed] the death knell for th[at] outmoded doctrine," 9A Wright & Miller's Federal Practice & Procedure § 2441 (3d ed.), providing instead that the determination of foreign

law is a "question of law" for the court, Fed. R. Civ. P. 44.1. Under Rule 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Id.* The rule thus " 'make[s] the process of determining alien law identical with the method of ascertaining domestic law to the extent that it is possible to do so,' " while at the same time "preserv[ing] a district court's freedom to employ fact-like procedures, including by taking written and oral testimony, as sometimes may be required to adjudicate foreign legal questions." *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 413 (2d Cir. 2020) (quoting 9A Wright & Miller § 2444). Accordingly, courts may rely on a variety of materials, including "[s]tatutes, administrative material, and judicial decisions"; "expert testimony" interpreting those primary sources; and "any other information" that may be probative. 9A Wright & Miller § 2444. On appeal, a court reviews the district court's determination of foreign law de novo. *Animal Science Products v. Hebei Welcome Pharmaceutical Co.*, 585 U.S. 33, 42 (2018).

In some cases—as in this one—a court deciding a question of foreign law is "provided with the views of the relevant foreign government." *Animal Science Products*, 585 U.S. at 42. The court is not "bound to adopt the foreign government's characterization nor required to ignore other relevant materials." *Id.* at 43. But it must "accord respectful consideration to [the] foreign government's submission": "[i]n the spirit of international comity, a federal court should carefully consider a foreign state's views about the meaning of

its own laws." *Id.* at 36, 43 (citation and quotation marks omitted); *accord Petersen Energía Inversora S.A.U. v. Argentine Republic*, 172 F.4th 120, 133 (2d Cir. 2026). "[T]he appropriate weight will depend upon the circumstances"—"[r]elevant considerations include the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions." *Animal Science Products*, 585 U.S. at 43.

### B. The District Court Did Not Give the Swiss Government's Views the Respectful Consideration Required by the Supreme Court

The district court did not follow those principles here. Rather than acknowledging that it was required to give careful and respectful consideration to a foreign sovereign's interpretation of its own laws, the district court simply asserted that it was responsible for determining foreign law, failed to meaningfully address important legal points raised by the Swiss government, and relied almost entirely on its own previous opinions about the content of Swiss law that were written without the benefit of the Swiss government's views. Its decision did not constitute "respectful" or "careful[ ] consider[ation]" of the Swiss government's views of its own laws; it thus ran afoul of principles of international comity and respect for the sovereignty of foreign states, and should be vacated. *Animal Science Products*, 585 U.S. at 36, 43.

The district court's short order, issued the day after receiving the Swiss ambassador's letter, was cursory and conclusory in several critical respects. To begin, the district court noted that the Swiss government's letter "argues . . . that Swiss law does not impose civil liability on a foreign sovereign," a contention the court deemed irrelevant because "this case will not impose liability on a foreign sovereign." (Dist. Ct. ECF 943 at 2). But the point made by the Swiss government is that an accomplice cannot be held liable under the applicable provisions of Swiss law if the main perpetrator itself cannot be held liable. (Dist. Ct. ECF 937 at 2). And the Swiss government stated that in this case, the main perpetrator—Sudan—could not be liable under Article 41 of the Swiss Code of Obligations, which "does not impose civil liability (1) on foreign sovereigns or (2) for extraterritorial acts." (*Id.*). "Accordingly, there can be no actionable private law tort claim against the 'main perpetrator' under Swiss law, and therefore [there] can be no secondary liability for its alleged accomplice." (*Id.*). The district court's reasoning is not responsive to those contentions.

The Swiss government's letter also stated that an accomplice must consciously cooperate in a specific plaintiff's injury, rather than providing generalized assistance to the perpetrator. (*Id.*). The district court's response focused only on conscious assistance to the perpetrator, essentially ignoring the Swiss government's assertion that the assistance in question must concern an unlawful act that injured a specific plaintiff for liability to attach.

The Swiss government's letter also stated that the accomplice's act must be unlawful under Swiss law, and noted in particular that if courts were to rely on the law of other countries to govern the actions of Swiss entities conducting transactions in Switzerland, it would "offend Swiss sovereignty." (Dist. Ct. ECF 937 at 2). Yet the district court simply stated that Swiss law is "not relevant." (Dist. Ct. ECF 943 at 2). Instead, with no analysis or support, the court opined that violations of U.S., New York, and (in an earlier decision) international law were the only pertinent considerations. (Dist. Ct. ECF 943 at 2); 2024 WL 1676355, at *2.

Finally, the district court's September 3, 2025, order did not respond to the Swiss government's assertion that Swiss law requires "full conviction" or "strict proof" of all elements of tort liability except "natural causation," which alone is governed by the "preponderant likelihood" standard. (Dist. Ct. ECF 937 at 2–3). The court did rule on that issue a few days later, holding that "preponderant likelihood" was the standard for all elements of the claims in this case. 2025 WL 2941595, at *2 ("'Preponderant likelihood' will be the single standard for Plaintiffs' burden of proof, applicable to all elements of the case."). In short, the court rejected the Swiss government's views, and did so without apparently considering or even mentioning the Swiss government's letter received less than a week before.

In all these respects, the district court's hasty and hastily considered dismissal of the Swiss government's position did not demonstrate the "respectful

consideration" or "careful[ ] consider[ation]" of that government's views that the Supreme Court requires. *Animal Science Products*, 585 U.S. at 36, 43. To be sure, the district court may have believed that it had to rule quickly, given that the Swiss government's letter was submitted only one week before trial, and indeed that timing may have made it difficult for the district court to give careful and respectful consideration to the Swiss government's views. Nevertheless, principles of international comity and the Supreme Court's *Animal Science Products* decision require more.

At a minimum, the district court should have applied the factors laid out by the Supreme Court, and assessed, for instance, whether the Swiss government's letter thoroughly and clearly explained its position; found support from other authorities; was consistent with other statements, if any, by the Swiss government; offered an authoritative official position of the Swiss government; and any other circumstances that added or subtracted from the weight to be given the views it expressed. *See Animal Science Products*, 585 U.S. at 43. If the district court, based on these considerations, had reason to doubt the Swiss government's views, it could have returned to the expert witnesses who had already testified as to the meaning of Swiss law, in particular to explain any discrepancies between the experts' opinions and those of the Swiss government. And the district court otherwise could have looked for authoritative and reliable sources to fully consider the legal issues. If the court continued to find the Swiss government's view incorrect, it should have explained why in a manner that responded to salient points. But because it did none of those things,

its analysis is not consistent with *Animal Science Products*.

The United States asserts no view on the proper weighing of the *Animal Science Products* factors, nor does it take a position on the correct meaning of Swiss law, in this case. But "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states," *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 543 n.27 (1987), requires that this Court and the district court afford the Swiss government the respect due to a sovereign state, and give careful consideration to its views on the meaning of Swiss law.

In addition, the district court's failure to give adequate weight to Switzerland's views raises significant concerns about the reciprocal treatment the United States government may receive in foreign tribunals. At any given time, the United States is defending its interests and personnel in hundreds of cases in foreign courts, and it expects those courts to give its views serious consideration and weight, particularly on matters of U.S. law. The failure of American courts to afford that same consideration and weight to a foreign state's views on its own laws invites a reciprocal disregard of U.S. views in foreign cases, contrary to the interests of the United States.

For all those reasons, the district court should be required to reevaluate its conclusions regarding Swiss law after giving proper respect and careful consideration to the views of the Swiss government. In the alternative, this Court may itself consider the Swiss

government's views under *Animal Science Products* as part of its de novo review of the district court's interpretation of Swiss law.

## CONCLUSION

**The judgment of the district court should be vacated.**

Dated: New York, New York
May 29, 2026

Respectfully submitted,

JAY CLAYTON,
*United States Attorney for the Southern District of New York, Attorney for the United States.*

BENJAMIN H. TORRANCE,
*Assistant United States Attorney,*
*Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4044 words in this brief.

JAY CLAYTON,
*United States Attorney for the Southern District of New York*

By: BENJAMIN H. TORRANCE,
*Assistant United States Attorney*