# 26-0341-cv

## United States Court of Appeals

*for the*

## Second Circuit

ENTESAR OSMAN KASHEF, TURJUMAN RAMADAN ADAM,
ABULGASIM SULEMAN ABDALLA,

*Plaintiffs-Appellees,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF AMICI CURIAE PROFESSORS THOMAS PROBST AND BLAISE CARRON IN SUPPORT OF PLAINTIFFS-APPELLEES**

Nicholas J. Jacques
Agnieszka M. Fryszman
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

*Counsel for Amici Curiae*

---

ALFADEL MOSABAL, ABUBAKAR ABAKAR, SIAMA ABDELNABI HAMAD, ABBO AHMED ABAKAR, HAWA MOHAMED OMAR, FATIMA ABDALLA ABDELRAHMAN, NYANRIAK TINGLOTH, REVEREND ANDERIA LUAL, NICOLAS HAKIM LUKUDU, JOHNMARK MAJUC, JOSEPH JOK, HALIMA SAMUEL KHALIFA, AMBROSE MARTIN ULAU, SANDI (SUNDAY) GEORGARI MARJAN, SHAFIKA G. HASSAN, JANE ROE, CLARA E. TABOR, SARA NOURELDIRZ ABDALLA, AMIR AHMED, ISAAC ALI, KUOL SHBUR, JUDY ROE, ESAMELDIN N. ABDELAZIZ, HAMDAN JUMA ABAKAR, ROSA BOL RING, ADIEL ABAKER ABDALLA, ARBAB KHAMIS KHATER, ISMAIL IDRIS ADAM, FATMA OMAR AHMED, HAWA ISMAIL, ADAM ABAKAR HISSEIN, ACHAN ACHOR DUMO, MONG PETER LAM, JACOB LOK GATKOUTH, MAHDI ALTIGANI ALNOUR, HAYDAR AHMED ABDALLA, MAHMOUD MOHAMED IBRAHIM, RABAB AHMED EL SAYED ADAM, HANADI ABAKER MOHAMED, AHMED JUMA AHMED, ATONG D DENG, ABDALLA MOHAMED IDRISS, MOHAMED OMER SALIH HASABO, OMAR BAHER SIBOURU, ADAM ABDELRAHMAN ISMAIL, ABDULMAJID A GAMAR, MUTAZ MOHAMED MAKI KOMI, GAFFAR HAMID ALI NOURELDEIN, NOHA GAFFER HAMID ALI, FATHIA YAGOUB ELNOUR BAKHAT, SADAM Y MOHAMED, KHALID SAYFELDIN KRAMELDIN, SALAH IBRAHIM AHMED, SOMIA ALI ALI, ABDELRAHMAN HASSAN AHMED, MOHAMED ADAM OSMAN MOHAMED, ELHADI HAROUN ADAM, YAHYA MUSA ABDALLA, ABDELRAHMAN OSMAN FADOUL, ABDELKARIM MOUSA OMAR, KUIER AGUER ATEMDENG, SAID ABOBAKAR AHMED ABDALA, ABDELRAZIQ MUSA HUSSEIN, MUSTAFA ALNOR, MOHAMED I ABOH, ALI OMER AMIR TAGAL, IBRAHIM FADL JUMAA, ABBAS KHAMIS HAROON, ZEINAB ABBU, YOUNES OMAR ADAM, IBRAHIM FADEL HUSSEIN, KALTHOUM ARBAB MUSA, MUSA S ADAM, ABDULATIF ISAAK, MARYAM BABO, BABIKER ABDALLA ISAAC, IBRAHIM ALNOR JUMA, ABOUD ISSA SALEH, OMER AMIR BAKHIT, NORELDIN ADAM OSMAN, EISA MOHAMED, IDRISS ADAM MOHAMED DAWOUD, ABDELAZIM ADAM AHMED ABDELMOULA, RAMADAN YAHAI HAROUN, ABDUSHAFAIE ABUBAKER AHMED, NAWAL ABAKR, MUSA MOHAMED AHMED, MUSTAFA ISAAC MOHAMMED, HAROUN MOHAMED IDRIS, ABDALLA OMER AMIR, HALEEMA HARSWON ABDALLA, ABDELGADIR MOHAMED ABBAKER, MUSA BABIKER ALI HUSSEIN, ABDELKARIM MOHAMED TOGOL B BAKHIT, MOHAMED ABDALLA MOHAMUD, HASSEN A MOHAMED ISMAEL ISMAEL, YAKOUB A YAKOUB, SALEH MOHAMED AHMED, YAGOUB OMER ELSHEIKH, SHADIA MOKHTAR HAMAD ABDELRHAMAN, ISMAIL ABBAS, MARIA ADAM SALIH, JAMES THON ALEER, MALUAL MANYOK DENG DUOT, AMIR SULEIMAN SHAWKAR, YOR CHOI YOR, MORWEL MATHIANG DENG, THON MAJAK DENG, ISHAG OTHMAN ADAM AHMED, SULEIMAN MOHAMED SALEH, JOSEPH AJEO MOILINGA, KRISTENA PETER RUFAEL, ELAF RUFAEL, NOURELDIN MAHDI ABDALLA ELTOM, ARBAB ABDALLAH ADAM, MOUSTAPHA IBRAHIM

MAHAMAT, SAMIA ARBAB ABDURHAMAN, HAMRA IBRAHIM FADOUL, DJOUMA ARBAB ADAM, MATAR MAKINE ABAKAR, YAKUB HAROUN ABDULMOLA, HALEIMA NASRALDEN ABDELMAWLA SHERF, YAHYA KHAMIS, ANWAR HAMED ELNOUR, HASSAN HADO IBRAHIM HASSAN, YOUNESS HASSAN, MOHAMED ADAM ABDALLAH, ABDU MOHAMED, AHMED ARGA BAKHIT, MOHAMMED DAUD ARBAB, ADAM BABKER IBRAHIM, MOHAMED ISHAG, ADAM ZAKARIA JUMA, MARIAM Y. YAKHOUB, SALIH MOHAMED EISSA, SAMIA ABDELRAHMAN, ABDELRAHMAN ADELKARIM, ADAM ABDALLAH BAKHAT, IDRIS ABDULRASUL ADEM, BUSH ZAKARIYA MOHAMMED, EHSSAN ALTAHIR SABIL, IBRAHIM MOHAMMED ADAM, MUBARAK OMAR WADI, JUMA SEIF SHAIBU, ABDELRAZIG ADAM DAHIYA, ABDULKARIM ALI IBRAHIM, AKUEIN AWAN KUETH, AMIRA EL DENG, HOUZAIFA AHMED, AISHA ADAM ABUBAKAR, NADIA YAKUB, DAVID MATTHEWS GERI-ORIMATEO, ZARA IBRAHIM MAHAMAT, ABDELRAHIM OSMAN BASHIR HASSAN, ADAM ABDELKARIM ADAM HAROUN, MUBARAK A. MOHAMED, MARY DENG, KALTUM JUMA ZACHARIA, MONA OSMAN ABDELRAHMAN HASSAN, SULEIMAN ABDALLA ISMAIL, LAILA IBRAHIM ABBAKER, MOHAMED IBRAHIM AHMED, RODA ABDALLA SULEIMAN, ZUHAL FADI, ABDELKARIM ADAM ADAM AHMED MUSA, ADAM AHMED ABUBAKAR, JOHN ALIER LEEK YEN, ABDULKARIM AZARAK AHMED, DAVID BUOTH, ABDELMONEIM MOHAMED KORSI, AKOL CITHEC MACAR AKOL, FATIMA M. ABDELLA, ABELWAHAB GUMAA, SHAMS ELDIN ADAM, ELNAKHEIL BASHA DARA, MICHAEL PETER ABA, MAYEN THON DENG AYUEL, IBRAHIMA ADAMOU, VIOLA PAUL, AHMED TOM ABDALLA SAIEED, YAIA ABAKAR ABRAHIM, VIOLA JOHN DIRI JOSEPH, RAMSEY RENBY SEBIT, AHMED SAIEED, ADAM MOHAMED IBRAHIM, ABBASS AWAD ADAM ALI, NUR AL HUDA ABUBAKAR, NYAKOACH PETER LAM, HEIDER ABULGASIM SULEIMAN, CLEMENT JOSEPH WANI MOJUS, ADIER M KUDUM AWEL KWAI, HATIM ABDALLA ADAM, ABDELGABAR MOHAMED MOHAMEDIAN, LUAL RIAK MARIER ADEIM, REBECCA NYAKOTA NYOACH, LAM THOT MUANG, SAMUEL MATHIONG REEC, TABESA AKON YUOL, GUOT KARLO KEN, ALI ABAKER HASSAN, BUOL MAYEN JOK, LEWIS ALFRED UTU BARUD, ADAM KHAMS ARBAB, MOHAMED ISSA SULIMAN ABDALLA, NYADUOP PETER LAM, NYABEL LAM THOT, MOHAMED ABBASHER MHDI, DENG DENG REYAK, ADAM HARI OMER ABU, GATLUAK PETER LAM, DENG YEL AKOL DENG, YUSSIF MOHAMMED SABIL, SALAH BAKHET BAKHET, NYBOL DENG REYAK, AHMED M ABKER, MUSA MOHAMED ARJA, MOUSSA BABIKIR ABAKAR, MAYSA OSMAN ARBAB, NOORELDIN OMER ALI, HAROON A BATI, ABDALLA SULIMAN ABAKAR, IZZELDIN SALEH AHMAD IBRAHIM, HAROUN HASSAN, DIYO JOK, IBRAHIM ADAM HASSAN, MAHASIN ELNOUR ADAM, ABDELMALIK HUSSEIN YAAKOUB, MOUSSA TEJEDDINE MOHAM AHMAD, RASHIDA HAMED AHMED BALLAH, ADAM JUMAA ARBAB, SOULEYMAN ABDELKERIM MAHAMAD, MICHAEL ADUUT PARENG,

MARY JOHN DERY JOSEPH, NASRIN ANGLO MOHAMED, ZAHRA MOUSSA, DIING RING DIING YOL, FLORA AVURU, RODA LOGA, SABIT BARAKENYI KUBARI, AMEER AJAK NYHAL, NASIR KABASHI NASIR, IBRAHIM BAKHAT, AHMED ADAM ARBAB, YOUSIF KHALIL SULIMAN, JOSEPH G GAMUNDE, ISMAIL ISAAK ADAM, MUNAZIR ABDULLAH BAKHIET, GABRIEL CHARLES RIAK, CHARITY LOWOH, AMNA MOHAMED HASSAN KHALIFA, SAMYA A. HARAN, JAMES KADIN, ABDALLAH OMAR IBRAHIM, ISHAG ADAM GUMA MOHAMED, ADAM YACOB HAMID, ZEINAB AHMED MUSA ABBAS, KAMAL ADAM ABDULRAHMAN, MOHAMMED DABIYO ADAM, BABIKER ISMAEL ABDAHMMLLAH ELNOUR, ESTER PETER BEYAL LUWAL, MAWADA IBRAHIM ALI BAKHAT, IBRAHIM A ALI, MALKA ADAM ARBAB, KALTOUM FADUL MUSTAFA, KHALID MOHAMED ALI, DUAL D LUAL, ADAM ABAKER ABDALLA, ABDLAZIZ ALI YAGOUB, TIMANE ISSA WAR, JAMES AYUEL REHAN, ISRAA IBRAHIM AHMED, SAMIA ABUBAKER ABDALLA MOHAMED, AHMAD ALI ASHEKH, ALSADK HASSAN ADAM, ABUBAKR ALDOUM ADAM MUSA, MANAHIL IBRAHIM ALI, SANTINO RIAK AKUEI AJAK, MOHAMED IBRAHIM KAMBAL, YOUNES SALEM OMAR, SUKRAH M ELDHAI, ISMAIL MOHAMED ABDELMULLA, ABUBAKAR ALI ZAKARIA, MAHAMAT IBRAHIM ARBAB, JAKLIEN FARAH, AHMED A ISAAK, ASMA M HUSSEIN, ELNOUR HAROUN BABIKER ALI ELRASHID, MONIKA MAKUER MAJOK DOMINIC, MAYOM RIAK MABOR, LORANS OUJIT LOUAL, ANESA SIMON AJEUTH, FANNE ABDELNABI, ABBAS KAMSOR IBRAHIM, YACUOB ADAM OUMAR, ABDALLAH MOHAMMED HASSABANABI, USMAN ARBAB SULAEMAN, NOEL JADA LAKO, JAFAR HARRY JUMMA HASAPALLH, KHALID KHATER MOHAMED ALI, ALSADIG J SABIL, NEHAL GIBREIL, MAWAHIB ABBO, MOHAMEDALMURTADA H ABDALLA, MUSA YAGOUB, YOUNIS MOHAMED MOHAMED, AMONAH ISMAEL, MAHMOUD HAMED ISSA, ABDULRAHMAN ABAKAR, TAGWA IBRAHIM YAHYA, MOHUSSIN ABAKAR, ABDULRASUL ADAM AHMED, AMAN MIHEMEED, YAHIA ADAM SHOGAR ATIA, MOHAMED ISMAIL YOUSIF, DAHIYA YACUB ADAM, MOHAMED AHMED MOHAMED, MALIK KHATAR MALIK, DOW HUSSIEN GASIM, ABDELAZIZ BAKHEIT, HABALDEEN ADAM HASSAN IDREES, YOSEF MOHAMED BAKHAT ABDALLA, ABDULRAHMAN ALNOUR GONGE, FATIMA TEGANI ALI, REMAZ ADAM, AHMED ALSADIG MOHAMED ABDELKARIM, MARIAM OMER KHAMIS, BUTHAINA A AHMED, MAGDI NOURALDIN YOUSF IBRAHIM, BUTRUS ALDO GWAKE LAZARUS, ANNA SERENO MODI, MARTHA AGUEK JOK, ADIL BASHAR ALI ADAM, SALAH MOHAMED KHATER AHMED, REBECCA ATHIENG DENG, YOUSIF MOHAMED, YAHYA ABDALLA JUMAA, ACHOL A AJAK, RHODA YAR ALIER, MOHAMMED KAMALELDIN HAMAH ALI, LUETH M YAK, ADAM ISMAIL MOHAMMED OMER, HAMADI YOUNIS AHMED ADAM, FADLALLA ADAM IBRAHEM MOHAMMED, YASIR RIZIG HASSAN, FATHIYA ABDELDAYIM, EMADALDEEN ALI SWAR BASHIR, MICHAEL M DUT, AMILIYA S DORI, ABDELRAZIG GUMA SULIMAN MOHAMED, NAMAT

OSMAN YAGOUB, SALADIN AHMAT HAROUN, MUBARAK ABAKAR MOHMMED, ADAM YAHYA OMAR, SAFIYA AHMAT HAROUN, AWATIF IBRAHIM ISSA, MONIR AHMED ABDALLA, ADAM MOHAMED ABDALLA AHMED, HASSAN ISSACK ABDALLA, DFAALLA BASHIR DFAALLA, MOAWIA ABDELRAHMAN I. ABOH, EBTESAM OSMAN, BASHIR D IDRISS, FAIZA SABIL MOHAMED, SAMUEL GUYA LOBURI, GAFAR IBRAHIM YAGOUB, NABEEL A KHAMIS, MUTASIM IBRAHIM ABDALLA MOHAMMED, MONICA H TIMON, MAGDI YAHIA YUNIS, IBRIS AMIN, KARIMA ABRAHIM, ALGEZAFEE MOHAMED HAMID HAMID, ZAINAB BABIKER ABDELMA HAS SAN, ZAHARA MOHAMED HUSSEIN, AGOK K GARANG, MOHIELDIN DAWED OMER, ROSE NAJORE HALISTO, NOURALDEIN ABAKER HOSS BAKHT, MOHMOUD IBRAHIM ABDULRAZIG, ABDALLAH ADAM TAHIR ADAM, HAMDI IBRAHIM AMIR, SULIMAN ADAM, MUBARAK YAGOUB IBRAHIM RAHMA, MUSTAFA MOHAMMED ALI, OMER ADAM OMAR, AHMED IBRAHIM YUSUF, HUSSIEN BASHIR HAROUN ADAM, RASHID HUSSEIN YOUNIS IBRAHIM, NOURDINIE MAHAMAD YUNIS, GAMAL ADAM YAGOUB HASSAN, MADIBO ADAM HASSABLLAH MADIBO, SALAHELDIN IDRIS YOUNIS SENIEN, AMER MOHAMMED BAKHT MENAWY, ADAM A IBRAHIM, NYANTHIEC JAM AWEL, NORALDIEM AHMED ISMAIL, LADO YANGA JURKIN, MUNA YAQOUB MOHAMED, AHMED ABDULRASOUL MOH MATAR, BAHARELDIN MOHAMMAD OMER ABDALLA, ABDU NORAIN MOHAMED, MUOTASIM MUSA ALSAFI, MAHSIM ABAKAR ISMAIL, MOHAMMED H KHATER, AUAR IBRAHIM YAHYA, KHALED OSMAN, YONIES HASSAN, ABDALLAH ALIELNOUR, JUR KUCHA, MOHAMMED IBRAHIM, HANAN MUSA TAGAL, ABDALKARIM ADAM MOHAMMED IZZALDIN, KAMAL AHMAD MAHMOUD, MARY ABIECH AKOON, ARBAB ISMAIL IBRAHIM, MOHAMED ADAM MOHAMED JUMA, MUSAB ARBAB, ZAHARA YEKISUK, MAHAMAD ISMAIL IBRAHIM, ADAM IBRAHIM ISMAIL, MONICA ALUEL AYUEN, MOHAMMED MAHMOUD WARA, EMAN ALI, ABOBAKER S IBRAHIM, ATIA KAFI KUJUR, ABUALGESEM A ABDALMOULA, IBRAHIM AHMED ALI, ABBAKAR EL SONOSI MOHAMED, JOHN MALWAL, MOHAMED O FADHL, YASSIEN DALEEL, MARY DAWOD L. LAKO, AMAN GAI GARANG DENG, AMNA KORASHY, EKALINO M AWOUR KUR, MAHMOUD ABDALLA ADAM ABDALLA, HAFIZ ABDULKARIM WADI, SAMUAL MUSA ABDALGADIR, MUBARAK SULIMAN RAHMA, YASMEEN MUSA ABELGADIR, ABDULRAZIK MAHDI, ABDELKARIM OSMAN HASSAN, BABIKER ABDALLA HAROUN ABDALLA, ABDALLAH ISHAG, ABDELBARI ELTIGANI M ADAM, ELSHAZLY RAHMA, ISMAIL AHMED ALNOUR, MANAL MUSA MUHAMED-AHMED, HASSAN AWAAD ABDALLAH, AMANI SHAREIF A. MOHAMED, MUTASIM A ALI AHMED, SAFA ALI ARBAB, AMIR ARBAB HASSAN MOHAMED, MOHAMED YAGOUB ADAM, ALI ADAM MOHAMMEDIN BHAR, HANAA AHMED ABAKER IBRAHIM, MAHGOUB ABDALLAH DAFALL KHDIR, EKRAM IBRAHIM HAMED, ABEER HAROUN MOHAMMED HASABALLAH, SAYEDA ABDALRHMAN FASHIR, A. B., SAFA ALI IBRAHIM

ABDELKARIM, ANDERIA AROK LUAL, SAIDA SHARAFEFLDIN MORSAL KHAMIS, ALI AHMED ELTAYIB ELFAKI, SADIYA M MOHAMED, MUSA ABDALWAHAB BABKER KAMAL, AHMED KHAMIS MOHAMED HAROUN, C. D., NYANGOK DANIEL DONGWAY, HAROUN HASSAN HAROUN, MAHA SABIR ABDALLA, ABUBAKAR IYDAM IBRAHIM MOHAMMED, SAMRA ABBAS IBRAHIM <OHAMMED, AZAHIR ALZAIN ADAM, KHALID HAROUN, ALSADIG SALIM TUKKA SABUN, ANDREW AKECH JOHN JOK, AWDIA AMIR ABDELBAGI, VICTORIA ADHAR AGUEK, ELTEGANI AHMED NHAR BERKA, YOSIF ABUALQASIM KHATIR OMER, SAMIA ALTOM TIBIN OMER, ZAINA HAMID GARELNAB ELTAHIR, SALIH INTISAR ABDELRAHMAN, GATAR GALIA HAMED ADAM, AHMED ISMAIL A. WADI, E. F., ATEM JOHN THUE AGUER, SAMIRA MOHAMMED ADAM IBRAHIM, FAISEL ABDURHMAN ADAM, OMDA A AHMED, ROSE BAGAZI LORI, MOHAMMED MOHAMMED AHMED, ZAKAREYA MOHAMED TARBOUSH, OMAR ABDELHAMEED, ALIET MALEK ALIER, TAHA HASSAN ISHAG, IBRAHIM A ISSA, AHMED ABDULKARIM WADI ISMAIL, AREK GARANG BAK LUAL, ZAKIA HAROUN SULYMAN ADAM, MAHMOUD MUKHTAR ELTAYB, OMAR HANDOGA KHATIR NAIR, ABDULLAH ABDULMAHMUOD ABDULMAHMUOD, ANWAR MOHAMMED DAFALLA, AHMED ADAM ELOMDA MOHAMED, AMINA OUSMAN IBRAHIM, AZIZA KHAMIS IBRAHIM, HAWA IBRAHIM JUMA HAROUN, SUMAIA IBRAHIM ALNOR JUMA, NOURACHAM OUMAR, ALTAYEB MUSTAFA ADAM WAR, BUTHAINA AMBADA, AMANI ABDALLA IBRAHIM, MOHAMMED ISMEIL JOMA MOHAMMED, ABUBAKAR ADAM OBAID BAKO, EMADALDEEN SULIMAN IBRAHIM, MAHMOUD ELRAYAH GUMAA, FAISAL ADAM IDRIS, MOUSAB TOGOL, KHALID ABAKER MUHAMED TAIRAB, ABDULAZIZ MOHAMMED ABDALLA, SIHAM ARBAB ABDALLAH, OSAM BAKHIT MUSA SAM, MUHIEDDIN ABELRAHMAN I. MAHMOUD, MOHYALDEEN ABDRHEEM ABAM ABAKAR, ACHOL GARANG AWUOL AKOIH, ABUK MATHIANG MADUT, HANADI ZAKARIYA IBRAHIM, GEHAD A ABDELRASOUL, MUNIRA HARON ALTOM MOUSA, AMEERA BASHEER HAROUN, HAITHAM ABUBAKAR ABDELMAILK, HAMED YAGOUB ADAM, NAJWA ADAM ISA JUBARA, OSMAN MAHAMED ISMAIL ABDELRAHMAN, MAHMOUD OMER ISSAK ADAM, SALMA ABDELKARIM ALI, ABDELRAHMAN YAGOUB ABDELMALIK,

*Plaintiffs-Consolidated Plaintiffs,*

– v. –

BNP PARIBAS, a French corporation,

*Defendant-Appellant,*

BNP PARIBAS NORTH AMERICA, INC., a Delaware corporation, DOES 1-10, BNP PARIBAS, SA NEW YORK BRANCH, a foreign branch, BNP PARIBAS

US WHOLESALE HOLDINGS, CORP., FKA BNP Paribas North America, Inc., a Delaware corporation,

*Defendants.*

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ix

INTRODUCTION AND INTEREST OF AMICI..................................................1

BACKGROUND ..........................................................................................2

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ..........................................................................................11

I. The District Court Correctly Applied Swiss Law in All Respects ..........................................................................11

A. The District Court's application of Article 50(1) is correct and consistent with the SFSC's longstanding interpretation .....................11

B. The jury's moral damages award was within the discretion granted to the trial court under Swiss law ..........................................18

C. The District Court correctly applied the "preponderant likelihood" standard of proof ..........................................................................20

II. Defendant's Amici's Criticisms Of The District Court's Rulings On Swiss Law Are Unfounded..........................................................22

A. The amicus brief of Dr. Monique Jametti wrongly criticized the District Court's application of Swiss law..........................................22

B. The criticisms in the amicus brief of Professor Pierre Tercier are similarly unfounded..........................................................................24

CONCLUSION ..........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Swiss Cases**

*A. v. B.*,
SFSC 148 III 1 .......... 4

*Boat*,
SFSC 4A_444/2010 .......... 17

*Coffee Machine*,
SFSC 133 III 81 .......... 20, 21

*Firecrackers*,
SFSC 42 II 473 .......... 6, 7, 12, 16, 17, 23

*Frick & Kons.*,
SFSC 57 II 417 .......... 16, 17

*Häfliger*,
SFSC 25 II 817 .......... 4, 16

*Hay Wagon*,
SFSC 55 II 310 .......... 4

*Hockey*,
SFSC 79 II 66 .......... 23

*Innkeeper*,
SFSC 71 II 107 .......... 15, 16, 25

*Locksmith*,
SFSC 4A_185/2007 .......... 4, 13, 18, 26

*Rediffusion*,
SFSC 107 II 82 .......... 14, 16, 26

*S. AG*,
SFSC 4C.69/2003 .......... 14

*Scooter*,
SFSC 6B_253/2012 .................................................................. 18

*Sola Fraud*,
SFSC 6B_1091/2009 ................................................................ 15

*Strip Search*,
SFSC 2C_19/2022 .................................................................... 12

*Swisscom*,
SFSC 145 III 72 ......................................................... 12, 14, 18

*Whiplash*,
SFSC 147 V 161 ...................................................................... 17

**Rules**

Fed. R. App. P. 29(a)(4)(E)........................................................... 1

**Swiss Statutes**

Swiss Code of Obligations, Article 41.............................................*passim*

Swiss Code of Obligations, Article 42(2)........................................... 21

Swiss Code of Obligations, Article 47.............................................. 19

Swiss Code of Obligations, Article 49.............................................. 19

Swiss Code of Obligations, Article 50(1) ……......................................*passim*

Swiss Code of Obligations, Article 51.............................................. 25

**Other Authorities**

BBl.1905 II 90 (Message of the Federal Council)................................. 5

Brunner, Die Anwendung deliktrechtlicher Regeln auf die Vertragshaftung (1991)
.................................................................................................. 27

Fellmann/Kottmann, Swiss Tort Law, vol. I (2020)..........................................27

Gauch/Schluep/Schmid, OR AT (2020)..........................................................27

Message du Conseil Federal, FF 1905 II 79........................................................5

Nussbaumer-Laghzaoui, Responsabilité plurale, responsabilité éloignée et dilution de responsabilité: La causalité à l'épreuve d'un monde complexe, La Semaine judiciaire (2022)..........................................................................28

Oftinger & Stark, Schweizerisches Haftpflichtrecht, vol. II/1 (1987)................27

Perritaz, L'art. 50 al. 1 CO: une norme qui fonde la responsabilité?, PJA (2018)...........................................................................................................28

Swiss Fed. Dep't of Just. & Police, Extension of the statute of limitations for civil liability (Jan. 21, 2009)..............................................................................8

Weber, Kausalität und Solidarität, HAVE (2010).............................................28

Werro, La responsabilité civile (2026)............................................................27

Widmer & Wessner, Revision and Unification of Liability Law: Explanatory Report.............................................................................................................8

Widmer & Wessner, Revision and Unification of Liability Law: Preliminary Draft of a Federal Act……………………………………………………………….8

## INTRODUCTION AND INTEREST OF AMICI[1]

Amici curiae Professors Thomas Probst and Blaise Carron are Swiss legal academics and leading scholars on the Law of Obligations. Amici have a strong professional and academic interest in ensuring the Swiss Code of Obligations is correctly understood and applied. Amici thus submit this brief to assist the Court in understanding the proper interpretation and application of Article 50(1) of the Swiss Code of Obligations. Amici contend that the District Court properly understood and applied Article 50(1), which sets forth a rule of secondary liability for instigators or accomplices of a primary tortfeasor. Ultimately, Amici find no error in the interpretation or application of Swiss law below, and they urge the Court to find the same.

**Professor Thomas Probst** is professor emeritus of Private Law at the Law Faculty of the University of Fribourg, Switzerland. He has been a member of the Bar in Switzerland since 1987. He holds a Doctor of Laws from the University of St. Gallen, a Professional Doctorate degree from the University of Basel, and an LL.M. degree from Harvard Law School. He was awarded *Dr. honoris causa* by

[1] No counsel for any party authored this brief in whole or in part. No party or party's counsel contributed money to fund the preparation or submission of this brief, and no person other than the amici curiae or their counsel contributed money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). Counsel for all parties have consented to the filing of this brief.

the University of Neuchâtel. He is the co-author of a leading textbook and of many articles on the Code of Obligations and has written specifically on Article 50 and 51 of the Code of Obligations.

**Professor Blaise Carron** is a tenured professor at the faculty of law at the University of Neuchâtel, in Neuchâtel, Switzerland, where he specializes in the law of obligations and legal methodology. Professor Carron holds a Bachelor of Laws degree and a Doctor of Laws degree from the University of Fribourg, and an LL.M. from Harvard Law School. He is a member of the bar of New York and the Swiss canton of Bern. He served as Vice-Dean and Dean of the Faculty of Law at the University of Neuchâtel, positions he held between 2016 and 2020. Professor Carron is the author of several publications in the law of obligations, most notably the following treatise on Swiss obligations law: Blaise Carron/Pierre Wessner, Droit des obligations, Partie générale (translation: Law of Obligations, General Part), Volumes I and II, Bern 2022/2024, as well as the annotated code: Blaise Carron/Sabrina Gauron-Carlin, CC & CO annotés (translation: Annotated Swiss Civil Code and Swiss Code of Obligations), 12th ed., Basel 2024.

## BACKGROUND

The Code of Obligations ("CO") governs civil claims arising under contract, tort, and unjust enrichment, with Section Two governing obligations in tort. As relevant here, Article 41 establishes the general rule of primary tort liability that

"[a]ny person who unlawfully causes damage to another, whether willfully or carelessly, is obliged to provide compensation." Article 50(1) adds, in the words of the official but non-binding English translation, that "[w]here two or more persons have together caused damage, whether as instigator, perpetrator or accomplice, they are jointly and severally liable to the person suffering damage."

There is a linguistic difference in the official German version of Article 50(1) on the one hand and the official French and Italian versions on the other. The German version translates as: "If several persons have caused damage *through collective fault*, whether as instigators, perpetrators, or accomplices, they are jointly and severally liable to the injured party." [2] (emphasis added). The French and Italian versions translate as: "When several persons have jointly caused damage, they are jointly and severally liable to compensate for it, without distinction being made between the instigator, the principal perpetrator, and the accomplice." Thus, while the French and Italian versions merely require the defendants to jointly cause the damage, the German version requires them to cause it "through collective fault."

[2] Unless otherwise noted, all translated quotes are Amici's translations. Where a translated version of a case was filed on the record in the District Court, Amici provide a citation to the translated version in the record for the Court's reference, but Amici rely exclusively on the original source material and their own translations.

The Swiss Federal Supreme Court ("SFSC") explicitly resolved this difference, by holding that Article 50(1) requires collective fault in a principal tort and a causal link between that fault and the damage. *See Hay Wagon*, SFSC 55 II 310, cons. 2. Beyond the obvious requirement of an unlawful act on the part of the main perpetrator (element 1), the SFSC recognized that Article 50(1) thus requires a common fault (element 2), i.e. all participants must have contributed to the tort either by intentional ("wittingly and willingly") or unintentional (careless) conduct; and a natural and adequate (equivalent of proximate) cause between the participants' conduct and the damage sustained by the victim (element 3). *See Häfliger*, SFSC 25 II 817, cons. 4.

Ever since, the SFSC has consistently and uncontroversially interpreted Article 50(1) as requiring these three elements (*Locksmith*, SFSC 4A_185/2007, cons. 6.2, ECF No. 708-15). Although Switzerland is a civil law country, with no proper *stare decisis* doctrine, courts do respect long-established judicial precedent. The SFSC holds that "current practice must be maintained." *A. v. B.*, SFSC 148 III 1, cons. 2.4.1. It only departs from precedent with considerable judicial restraint, requiring compelling grounds such as "changed external circumstances." *Id*. A Swiss court is not at liberty to depart from more than 100 years of consistent caselaw. The District Court has rightly adopted this interpretation.

For over a century, the Swiss courts and Swiss Parliament have shared the understanding that Article 50(1) imposes liability, even if one cannot identify which of the participants actually caused the harm. The legislative history and foundational caselaw confirm that this was the correct interpretation. Article 50(1)'s predecessor, Article 60(1) of the former Code of Obligations, stated: "Where two or more persons have together caused some damage, they are jointly and severally liable for compensation irrespective of whether they acted as instigator, perpetrator or accomplice."[3] In 1905, the Federal Council submitted a Draft Bill to Federal Parliament for an improved wording of the old Article 60(1). It read: "Where two or more persons have together caused damage, whether as instigator, perpetrator or accomplice, they are jointly and severally liable to the person suffering damage *even if it cannot be determined who of the persons involved caused the damage through his actions* (emphasis added)."[4] The bill

---

[3] In German: *Haben mehrere den Schaden gemeinsam verschuldet, so haften sie solidarisch für den Ersatz, ohne Unterschied, ob sie als Anstifter, Urheber oder Gehilfen gehandelt haben.* In French**:** *Lorsque plusieurs individus ont causé ensemble un dommage, ils sont tenus solidairement de le réparer, sans qu'il y ait lieu de distinguer entre l'instigateur, auteur principal et le complice.*

[4] In German: *V. Haftung mehrerer: Haben mehrere den Schaden gemeinsam verschuldet, sei es als Anstifter, Urheber oder Gehilfen, so haften sie dem Geschädigten solidarisch, und zwar auch dann, wenn sich nicht ermitteln lässt, wer von mehreren Beteiligten den Schaden durch seine Handlung verursacht hat*. BBl.1905 II 90. In French: *V. Responsabilité de plusieurs participants à l'acte illicite: Lorsque plusieurs ont causé ensemble un dommage, soit comme instigateur, auteur principal ou complice, ils sont tenus solidairement de le*

expressly framed the amendment to old Article 60 as “a clarification” and stated that the proposed new text was “consistent with the meaning of the [then] current Article 60.”

In the parliamentary debate in 1909, the National Council did not adopt the Federal Council’s amendment. The Parliament adopted the current version of Article 50(1), which bore no substantive changes to the old Article 60(1). In the *Firecrackers* case, decided in 1916 – five years after the new CO was enacted – the Supreme Court explained that the clarifying amendment was indeed superfluous because Article 50(1), as drafted, applied even if no participant could be held liable under Article 41 as the principal perpetrator. *See Firecrackers*, SFSC 42 II 473, cons. 4, ECF No. 708-18.

In *Firecrackers*, the plaintiff sued three defendants because she was injured by a firecracker one of them had shot at her through a blowpipe. All three defendants had been shooting the firecrackers at passersby, but it could not be determined which one had shot the firecracker that injured the Plaintiff. The Cantonal Court dismissed the claim for lack of proof of *who* (of the three defendants) had cast the injurious firecracker. However, on appeal the SFSC

---

*réparer, même s’il n’est pas possible de déterminer auquel d’entre eux le préjudice est imputable.* FF 1905 II 79.

reversed and held all three defendants jointly and severally liable for the harm sustained by the plaintiff under Article 50(1).

The SFSC held that when the offenders strolled together through the streets, throwing firecrackers at passersby, only one of them could have cast the injurious firecracker. Although this person could not be determined, the conduct of them together constituted the relevant cause under Article 50(1) of the injury sustained by the victim. The Court explained that the National Council's decision not to follow the Federal Council's proposed amendment was no impediment to its holding. And as further support, it cited German and French law, which likewise allow for joint and several liability where the principal perpetrator cannot be identified.[5]

Accordingly, the Court held that all three defendants could be held liable under Article 50(1). Since logically the injurious cracker could have been cast only by one of the perpetrators, only the main perpetrator met all the conditions of Article 41, whereas the two other co-perpetrators did not. Consequently, their liability was based on their collective culpable and causal participation in the tort of the main perpetrator's unlawful conduct. Now if a co-perpetrator is liable under Article 50(1) without any proof of him personally having committed an unlawful

[5] Indeed, the Federal Council's proposed clarifying amendment drew directly from German Civil Code § 830(1).

act under Article 41, then *a fortiori* an accomplice having assisted the main-perpetrator's tort is liable under Article 50(1).

Finally, a failed effort in the 2000s to amend Article 50(1) further evidences its settled meaning. In 2000, a preliminary draft for a revised CO proposed to amend Article 50(1) to read, "If several persons are liable for damage caused to a third party, they are jointly and severally liable for compensation."[6] The amendment would have removed the words "accomplice," "instigator," and "collective fault" and replaced Article 50(1) with a new restriction that joint and several liability should attach only to those already liable. The amendment failed.[7]

In short, Article 50(1) has remained unchanged in its 115-year history and the unbroken line of precedent construing it as a liability rule, making accomplices

---

[6] Pierre Widmer & Pierre Wessner, *Revision and Unification of Liability Law: Preliminary Draft of a Federal Act*, 8 (translation available at https://clinics.law.harvard.edu/human-rights-entrepreneurs/files/2026/08/Draft-Revision-and-Reunification-of-Liability-Law-Transl.pdf ). The rationale for the proposed reform—which rejected the system of collective fault for instigators and accomplices in favor of concurrent liability for co-perpetrators—was explained in a report commissioned by the Federal Council. Pierre Widmer & Pierre Wessner, *Revision and Unification of Liability Law: Explanatory Report*, 169-170 (translation available at https://clinics.law.harvard.edu/human-rights-entrepreneurs/files/2026/08/Widmer-Wessner-Explanatory-Report-for-Draft-Revision-of-Liability-Law-Transl.pdf).

[7] *Extension of the statute of limitations for civil liability; The Federal Council Decides Against a Comprehensive Reform of Civil Liability Law and Opts for a Partial Revision*, Swiss Fed. Dep't of Just. & Police (Jan. 21, 2009), 2 (translation available at https://clinics.law.harvard.edu/human-rights-entrepreneurs/files/2026/08/2009-Swiss-tort-reform-press-release-Transl-1.pdf).

and instigators liable for contributing to a tort, even without any finding of their own liability under Article 41.

## SUMMARY OF THE ARGUMENT

The District Court correctly applied Swiss law. Its instructions to the jury correctly stated and applied the three elements of a liability under Article 50(1): (1) a main perpetrator committed an unlawful act; (2) an accomplice consciously assisted such perpetrator and knew or should have known that he contributed thereby to the tortious act; and (3) their culpable cooperation was the natural and adequate cause of the victim's harm.

The requirement that a main perpetrator committed an unlawful act does not require that the principal tortfeasor actually be sued and held liable or even subject to the Court's jurisdiction. Regarding collective fault, the District Court properly instructed the jury that the Defendant must have known or reasonably should have known that the Defendant's activities would contribute to the unlawful act. The District Court's application of this element is well grounded in SFSC caselaw, which further establishes that an instigator or accomplice need not himself commit a tort within the meaning of Article 41 to be held liable under Article 50(1). Finally, the District Court properly instructed the jury that the causation element requires the jury to find that the principal violation would not have occurred in the same way without the Defendant's conduct and that it was reasonably foreseeable

that the Defendant's conduct would contribute to the principal violation. This standard is well established in the SFSC caselaw.

The jury acted within the discretion afforded to the trial court under Swiss law in awarding moral damages. Swiss law does not prescribe any mandatory maximum limits for moral damages, rather it requires that each case be assessed on its own facts. Looking to what Swiss judges customarily do in other cases is not an apt comparison for how a hypothetical Swiss jury would have awarded moral damages in the present case.

The District Court applied the correct standard of proof. Although the default standard of proof requires the Court to be fully convinced of the veracity and accuracy of an alleged fact, the lesser preponderant likelihood standard applies when the trial court finds that there is an "evidentiary hardship," meaning that the facts alleged can only be established indirectly and by circumstantial evidence. Having found an evidentiary hardship, the District Court properly applied the preponderant likelihood standard. The finding of an evidentiary hardship is a finding of fact that would not be reviewable by the SFSC on appeal under Swiss law.

Defendant's amici's criticisms of the District Court are unfounded. Article 50(1) does not require that the court has jurisdiction over the main perpetrator, nor does it require that the defendant be separately liable under Article 41. The text and

structure of Article 50(1), more than 100 years of consistent SFSC rulings, and the prevailing academic commentary all demonstrate that Article 50(1) is a liability rule – it does not merely apportion the liability of tortfeasors under Article 41.

# ARGUMENT

## I. The District Court Correctly Applied Swiss Law in All Respects

### A. The District Court's application of Article 50(1) is correct and consistent with the SFSC's longstanding interpretation

The District Court's opinions and orders provide a professional, well-reasoned, coherent and, ultimately, correct construction and application of Article 50(1) based on the accurate and reliable legal opinions of Professor Franz Werro. Based on the agreement of the parties' experts, the District Court correctly required Article 50(1)'s liability to depend on three elements: (1) a main perpetrator committed an unlawful act; (2) an accomplice consciously assisted such perpetrator and knew or should have known that he contributed thereby to the tortious act; and (3) their culpable cooperation was the natural and adequate cause of the victim's harm (material or moral damage). The District Court correctly instructed the jury on each element.

#### 1. An Unlawful Act by the Main Perpetrator

First, the District Court instructed the jury that the Plaintiffs must prove "that the government of Sudan committed human rights violations." ECF No. 1071 at 118. This correctly reflects the first element of Article 50(1) liability, which

requires proof of an "unlawful principal act" ("rechtswidrige Haupttat"). *Swisscom*, SFSC 145 III 72, cons. 2.2.2, ECF No. 708-13.[8] However, it does not require the principal tortfeasor to actually be sued and held liable for the principal tort, nor does it require that the court has jurisdiction over the principal tortfeasor.

The *Firecrackers case* and the legislative history demonstrate as much, as they clarify that Article 50(1) may be applied even when the principal tortfeasor *cannot be identified*. The same principle applies if, for example, the principal tortfeasor died, cannot be located, or is beyond the court's jurisdiction. The very point of joint and several liability is to add protection for the victim. By providing claims against the accomplice, it frees the victim from needing to obtain a judgment against the main perpetrator. Never in the legislative history or caselaw has Article 50(1) been construed as immunizing the accomplice from liability if, for whatever reason, the principal perpetrator cannot be identified or brought into court. Obviously, to hold otherwise would promote Switzerland as an international haven for financially or otherwise abetting tortious acts abroad.

---

[8] There can be no serious debate that the human rights violations alleged by the Plaintiffs and proven at trial are tortious under Article 41. They involve violations of the same absolute rights specifically recognized by the SFSC. Unlawfulness has the same meaning for Articles 41 and 50. An act is unlawful when it violates an "absolute right" protected in the Swiss legal order, including the rights to life, bodily integrity, mental health, privacy, family life, and sexual integrity. *See Strip Search*, SFSC 2C_19/2022, cons. 6.4, ECF No. 708-2 (an abusive strip search by a border guard is an unlawful act).

2. Collective Fault

Regarding the second element, collective fault, the District Court instructed the jury that the Plaintiffs must show the Defendant "knew, or reasonably should have known, that the government of Sudan was engaged in human rights violations and that Paribas' activities would contribute to the government's ability to commit human rights violations." ECF No. 1071 at 117. This too is correct, as the *Locksmith* case demonstrates, where a bookkeeper, who did not do anything unlawful by providing administrative and financial services to his client, was held liable for trademark infringements committed by his client. *Locksmith*, SFSC 4A_185/2007, cons. 6.2., ECF No. 708-15. The SFSC articulated the elements required for collective fault: the accomplice and perpetrator "[knew] or could have known, through exercising due care, of the others' contribution to the harmful act," *id.* cons. 6.2.1, and the participants must either have "wanted the harm to occur (intent), or at least were aware it could happen (recklessness), or they could have avoided it if they had paid the necessary attention to the circumstances (negligence)," *id.* cons. 6.2.2. At the end of *Locksmith*, the reference to Article 41 regarded the main perpetrators, not the accomplice. *Id*. cons. 7.

The SFSC has held on multiple occasions that an instigator or accomplice who contributes to the main perpetrator's tort is jointly and severally liable under Article 50(1) for the victim's damage, regardless of whether he himself committed

a tort – that is, regardless of whether the defendant's conduct as an instigator or accomplice is unlawful in the sense of Article 41. The SFSC stated this explicitly in the 2019 *Swisscom* decision: "the person who contributes to the infringement as an accomplice, but does not himself fulfill any statutory infringement requirement, is jointly and severally liable for the tort pursuant to Art. 50 para. 1 CO." *Swisscom*, SFSC 145 III 72, cons. 2.2.1, ECF No. 708-13.

*Swisscom* reaffirmed the *Rediffusion* decision, where the SFSC had held that state-owned telecommunications companies, PTT, were jointly and severally liable as accomplices under Article 50(1) for the copyright infringement committed by another defendant. *Rediffusion*, SFSC 107 II 82, ECF No. 533-10. The SFSC expressly stated that "[w]hether the PTT infringes copyrights by operating its directional antenna network in and of itself, *need not be decided*" because PTT is "jointly and severally liable under Art.50 para.1 SCO, *even if [it] participated merely as an accomplice* in the infringement committed by Rediffusion." *Id.* cons. 9a (emphasis added). Because Article 50(1) does not require that the accomplice committed an unlawful act, it is irrelevant whether the accomplice believed it was acting lawfully: "The fact that the defendants may have considered their actions to be licit does not exempt them." *Id.* Other cases are in accord. *See, e.g.*, *S. AG*, SFSC 4C.69/2003, cons. 4.1 ("Here, too, the perpetrator does not himself commit patent-infringing acts, but enables third parties to do so by, for example, supplying

them with the materials, tools, etc., necessary to carry out the invention" (citations omitted)); *Sola Fraud*, SFSC 6B_1091/2009, cons. 5.2.1 ("[F]or the assessment of the claims for damages brought against him, it is not of decisive importance whether he personally or directly influenced the injured parties. Even if these acts were committed by other participants, they are to be attributed to the appellant as an accomplice pursuant to Art.50 of the Swiss Code of Obligations . . .").

As another example, in the *Innkeeper* case, SFSC 71 II 107, cons. 2 & 3, ECF No. 528-111, the plaintiff was injured when two individuals (Mr. Banfi and Lieutenant Schneider) organized a shooting game in the courtyard of an inn, an activity tolerated by the innkeeper (Mr. Rey). The plaintiff did not sue the primary perpetrator (Mr. Banfi) – that is, the individual who fired the bullet that caused the injury. The SFSC held that the second individual (Lieutenant Schneider) was liable under Article 41 *et seq.* for co-organizing and personally participating in the shooting game. The plaintiff sued further the innkeeper (Mr. Rey), whom the SFSC held liable, expressly as an accomplice under Article 50(1), not because he would have committed a tort himself, but because he participated in the collective fault and thus provided assistance in the commission of the tort committed by the shooters.

The SFSC's caselaw thus establishes, *inter alia*, that for liability to attach under Article 50(1) an instigator's or accomplice's abetting conduct need not be

unlawful in the sense of Article 41, *see, e.g.*, *Rediffusion Case*, SFSC 107 II 82, cons. 9a, ECF No. 533-10, and can be an intentional or unintentional act or omission, *see, e.g.*, *Frick & Kons.*, SFSC 57 II 417, cons. 2; *Innkeeper*, SFSC 71 II 107, cons. 3, ECF No. 528-111. Further, as discussed above with regard to the *Firecrackers* case, liability can attach under Article 50(1) even where the primary perpetrator cannot be identified and held liable under Article 41.

3. Joint Causation

Regarding the third element, the District Court instructed the jury that the Plaintiffs must prove that the Defendants' "assistance to the government of Sudan was a natural and adequate cause of his or her injuries." ECF No. 1071 at 118. Regarding natural causation, the District Court elaborated that "the human rights violations of the plaintiffs would not have occurred in the same way or in the same magnitude without the banking and financing services provided by BNP Paribas." ECF No. 1071 at 118-119. Regarding adequate causation, the District Court elaborated that Plaintiffs must prove "that it was reasonably foreseeable that banking and financing services provided by a major international bank to the government of Sudan would result in a greater likelihood or greater intensity of human rights violations and thereby plaintiffs' damages." ECF No. 1071 at 119. These instructions accurately state Article 50(1)'s joint causation requirement. *Cf. Häfliger*, SFSC 25 II 817, cons. 4 ("collective cause of the damaging event");

*Firecrackers*, SFSC 42 II 473, cons. 3, ECF No. 708-18 ("Through their collective conduct, the two defendants, who did not themselves directly commit the tortious act, triggered a contributory cause for damage"); *Frick & Kons.*, SFSC 57 II 417, cons. 2 ("In such cases, however, […] not only the conduct of the direct perpetrator, but that of all who have participated in such an undertaking – regardless of the extent of their participation – appears as causal for the effects that have occurred"; SFSC 71 II 107, cons. 3, ECF No. 528-111 ("However, by failing to monitor or ensure that someone else monitored what was happening in the garden of his establishment, the innkeeper committed a fault that is causally related to the accident.").

The SFSC has defined a "natural causal connection" as "all circumstances without the existence of which the event that has occurred cannot be considered to have occurred or to have occurred in the same way or at the same time." *Whiplash*, SFSC 147 V 161, cons. 3.2, ECF No. 708-14. It is not necessary that the defendant's actions "be the sole or direct cause" of the damages, "it is sufficient that the damaging event, together with other conditions, has impaired the physical or mental integrity of the injured person." *Id*; *see also Boat*, SFSC 4A_444/2010, cons. 2.1, ECF No. 533-61 ("A natural causal relationship exists if the damaging action represents a necessary condition (*conditio sine qua non*) for the damage that

has occurred, i.e., the result could not have occurred without the relevant behavior, or it could not have occurred in the same way or at the same time.”).

Adequate causation requires proximity or foreseeability. An adequate causal link exists “when the wrongdoer’s conduct was capable, in the ordinary course of events and common experience, of leading to the kind of result that occurred.” *Scooter*, SFSC 6B_253/2012, cons. 3.3.2, ECF No. 174-2. Although “not every random contributing act that is merely ‘somehow’ a supportive influence . . . is adequate,” there is adequate causation for Article 50(1) purposes if “the conduct of a contributor” is “generally capable of facilitating the [unlawful act] of the direct infringer.” *Swisscom*, SFSC 145 III 72, cons. 2.3.1, ECF No. 708-13. In the *Locksmith* case, the SFSC explained that foreseeability is a key criterion: “In the ordinary course of events and common life experience, it was reasonably foreseeable that the defendants, by associating with [the trademark infringer] would infringe the plaintiff’s intangible rights” and “cause the plaintiff a significant loss.” *Locksmith*, SFSC 4A_185/2007, cons. 6.2.3., ECF No. 708-15.

### B. The jury’s moral damages award was within the discretion granted to the trial court under Swiss law

Code of Obligations Articles 47 and 49 grant the trial court discretion to set the amount of moral damages. Although for legal, historical, social and other reasons, the amounts that juries award for noneconomic damages in the U.S. are often much higher than moral damages trial courts award in Switzerland (including

for one reason the existence of public insurance regimes for Swiss residents), Swiss law does not prescribe mandatory minimum and maximum limits. Rather, each case is to be assessed on its own facts and moral damages are to be set by the court within its discretion. Over time, the amounts awarded for moral damages have increased and will continue to do so.

Besides, what Swiss judges customarily do, is not *eo ipso* a relevant benchmark for how a New York jury has to render a verdict when exercising its constitutional discretion to determine the amount of compensation for human rights violations suffered by victims. Given that Switzerland has no experience with jury trials in civil matters, there is no sound basis for a comparison as to which compensation a Swiss jury would have awarded for moral damages in the present case and what amount would qualify as irreconcilable with Swiss law. Thus, to compare the incomparable is not a cogent argument. There is neither any discernible risk that the U.S. District Court's compensation for moral damages might have a negative impact on future Swiss litigation as no Swiss court is under any duty whatsoever to follow rulings based on Swiss law by foreign courts and/or arbitral tribunals – and Swiss courts certainly have no obligation to follow a foreign jury's moral damages award.

### C. The District Court correctly applied the "preponderant likelihood" standard of proof

Under Swiss law the *burden* of proof for disputed facts is governed by Article 8 of the Swiss Civil Code, which states that "unless the law provides otherwise, the burden of proving the existence of an alleged fact shall rest on the person who derives rights from that fact." In other words, Article 8 regulates the consequence of a lack of proof. Whether or not a disputed fact is established by sufficient evidence depends on the applicable *standard* of proof, which can vary depending on the circumstance.

Although the default standard of proof requires that, based on objective considerations, the Court is fully convinced of the veracity and accuracy of an alleged fact, a lesser "preponderant likelihood" standard applies in all cases of "evidentiary hardship" (*Beweisnot*). This condition exists if there is a lack of direct evidence and "if the facts alleged by the party bearing the burden of proof can only be established indirectly and by circumstantial evidence." *Coffee Machine*, SFSC 133 III 81, cons. 4.2.2, ECF No. 708-20. Under the "preponderant likelihood" standard, the burden of proof is met if sufficiently compelling reasons are speaking for the veracity of an alleged fact so that other conceivable reasons need not seriously be considered. The "preponderant likelihood" standard aims to avoid the injustice that would result in cases where there is an inherent lack of available evidence sufficient to meet the default standard's strict demands. The legislature

expressly endorsed the "preponderant likelihood" standard in Article 42(2) regarding the proof of material or moral damage, and the SFSC has repeatedly applied it for the proof of natural and hypothetical causation. Although most often used for proof of causation, it may apply to any element of a claim. For example, in the *Coffee Machine* case, the SFSC applied the preponderant likelihood standard in finding the plaintiff had proved a product's defectiveness.[9] *See Coffee Machine*, SFSC 133 III 81, cons. 4.2.3, ECF No. 708-20.

Here, the District Court correctly found that the Plaintiffs faced evidentiary hardship in proving all three elements of their Article 50(1) claims through circumstantial evidence. Accordingly, the District Court applied the "preponderant likelihood" standard to the elements of Article 50(1). *See* ECF No. 1071 at 116. This was the correct application of Swiss law given the District Court's findings. Moreover, since the establishment of both an evidentiary hardship and natural causation are questions of fact – and not of law – the SFSC under Swiss procedural law would not be permitted to review the lower court's finding on natural causation, if the case were adjudicated by the Swiss Courts.

---

[9] An even lower standard of proof may apply, i.e. the prima facie evidence of "plausibility."

## II. Defendant's Amici's Criticisms Of The District Court's Rulings On Swiss Law Are Unfounded

### A. The amicus brief of Dr. Monique Jametti wrongly criticized the District Court's application of Swiss law

Defendant's amicus, Dr. Monique Jametti, argues that the District Court erred in applying Article 50(1), but her amicus brief foregoes a thorough analysis of SFSC caselaw or prevailing legal scholarship.

Dr. Jametti's assertion that the SFSC has never held an accomplice liable under Article 50(1) without also finding the accomplice meets the requirements of Article 41 is simply erroneous. As seen above, the SFSC has done this exact thing on numerous occasions.

Dr. Jametti also argues the Government of Sudan could not be held liable under Article 41, so Appellant cannot be held derivatively liable under Article 50(1). Dr. Jametti's assertion about the scope of Article 41 is both misleading and irrelevant. Putting aside the question of whether a Swiss court would have *jurisdiction* to hear a claim under Article 41 against the Sudan, it is clear that the Government of Sudan committed an unlawful act within the meaning of Article 41. Whether Article 41 applies or another norm of liability based on an unlawful act, such as the federal statute governing the liability of the Swiss Confederation when acting in the course of a sovereign activity, is irrelevant for the application of

Article 50(1) to a private party. The contrary is only conceivable if a specific statute provides so. *See Hockey*, SFSC 79 II 66, cons. 8, ECF No. 460-17.

Because the SFSC has no jurisdiction over unlawful acts committed by foreign governments within their own sovereign territory, it is unsurprising and unremarkable that Dr. Jametti's research did not locate any SFSC judgments applying Article 41 to foreign governments. The U.S. District Court's jurisdiction here is, of course, not a question of Swiss law, and is beyond the proper scope of this brief and of Dr. Jametti's brief.

Regardless, whether Sudan could be held liable under Article 41 is irrelevant. As demonstrated above, an accomplice's liability under Article 50(1) is not predicated, as incorrectly assumed by Dr. Jametti, on an actual prior judgment holding the main perpetrator liable under Article 41. *See Firecrackers*, SFSC 42 II 473, cons. 4, ECF No. 708-18.

Here, the District Court and the Parties' experts agreed that the Government of Sudan was the main perpetrator of unlawful acts executed through atrocious human rights violations. Such conduct qualifies as a tort under Article 41 triggering the liability of the accomplice under Article 50(1), if Swiss law is applicable and the conditions of said provision are met. Both are the case here.

Dr. Jametti next argues that both perpetrators and accomplices alike under Article 50(1) must *also* be found liable under Article 41. Again, the legislative

history of Article 50(1), the *Firecrackers* case, and the consistent SFSC caselaw that has followed it demonstrate otherwise. An accomplice or instigator need not be liable under Article 41 to be held liable under Article 50(1). Moreover, it is self-defeating to assert that for an instigator or accomplice to be liable under Article 50(1), he must meet all tort requirements of Article 41. This would mean that an accomplice must, by definition, also be a co-perpetrator and would render Article 50(1) utterly superfluous. Indeed, were an accomplice only liable if he fulfilled all the requirements of a tort liability under Article 41, there would be no need for a specific norm dealing with the liability of the concept of “accomplice.” Article 50(1) would have no *raison d’être* and ought to be struck down. Such an interpretation would assume the legislature acted unreasonably in drafting Article 50(1) and would contradict the legislature’s purpose of protecting tort victims. As noted above, an attempt was made in the early 2000s to remove the term "accomplice" from Article 50. This attempt failed, further confirming the statute’s settled meaning.

### B. The criticisms in the amicus brief of Professor Pierre Tercier are similarly unfounded

The amicus brief of Professor Pierre Tercier argues that Article 50(1) is not a liability rule at all but serves to merely apportion the liability of tortfeasors under Article 41. This assertion contradicts not only Article 50(1)’s wording and purpose,

but also well-established SFSC caselaw, and overlooks the prevailing contemporary scholarly writings approving that caselaw.

As explained above, the structure of the Code of Obligations shows that Article 50(1) is a liability rule. Article 51 is a loss allocation rule based on the individual liability of several persons acting independently from one another and provides for the judge's discretion by reference to Article 50(2). By contrast, Article 50(1) is a liability rule providing for solidarity based on a joint involvement of participants in the main perpetrator's tort under Article 41. Consequently, Article 50(2) regulates the right of internal recourse, i.e. the loss allocation between jointly and severally liable persons under Article 50(1)[10].

Moreover, as explained above, since the 1916 *Firecracker* case, there is a consistent line of SFSC caselaw that an accomplice is liable under Article 50(1) without himself committing a tort under Article 41. Professor Tercier's brief misreads key SFSC cases. First, Professor Tercier's brief asserts that the *Innkeeper* case simply inquires whether the defendants' liability was joint and several. This is not so. The Court expressly held the innkeeper liable under Article 50(1) as an accomplice ("*complice*") on the sole ground that he had assisted the tort committed

[10] Article 50 does not deal with the situation where each participant individually committed a tort under Article 41. For that situation, there are concurrent claims based on that Article and Article 51 merely provides for a right of recourse in favor of the tortfeasor who has compensated the victim.

by the shooting game's organizers, and not because he would have committed a tort himself. Likewise, in the *Locksmith Case*, the SFSC held liable as accomplices two defendants who were not personally involved in any of the trademark infringements committed by the main perpetrator. The court based its holding expressly on Article 50(1) without any mention of Article 41 *Locksmith*, 4A_185/2007, cons. 6, ECF No. 708-15. The separate reference to Article 41 concerned the liability of the main perpetrators, not that of the accomplice. *Id.* cons. 7.

Professor Tercier's discussion of *Rediffusion* fails to explain away the SFSC's clear holding that the defendant's liability was established as an accomplice under Article 50(1). His brief focuses on the "lengthy discussions" that "*tend* to establish" the defendant's liability, Amicus Curiae Brief of Professor Dr. Pierre Tercier at 12 (emphasis added), but it does not address the Court's express clarification that "[w]hether the [accomplice defendant], by operating its directional antenna network, is in itself already infringing copyrights *need not be decided*" because the defendants "are jointly and severally liable *under Article 50(1)* for the tort if they participate in the infringement by Rediffusion *even as mere accomplices*." *Rediffusion*, SFSC 107 II 82, cons. 9a, ECF No. 533-10 (emphasis added).

Professor Tercier's brief cites to his own academic writings and those of Professor Karl Oftinger, whose approach he follows. The theory that Article 50(1) is not a liability rule did appear in a one-line passage in Professor Oftinger's and Professor Emil Stark's 1987 treatise on civil liability law (Schweizerisches Haftpflichtrecht, vol. II/1, § 16 N. 318), but this is not the established doctrine. Oftinger's and Stark's passage on Article 50(1) gave no explanation how this academic approach was reconcilable with the SFSC caselaw issued ever since 1916. Only a minority of legal commentators followed their approach, though they too never addressed the striking shortcomings in the argument; for example, they failed to explain why the legislature should have bothered to differentiate between instigator, accomplice and perpetrator in Article 50(1), if an instigator's or accomplice's liability presupposed anyway liability as a tort-feasor/perpetrator under Article 41. Over the last decades, this unfounded and outdated minority interpretation has largely been superseded by contemporary legal writings, which describe Article 50(1) as a liability rule.[11] This prevailing legal scholarship is well-

[11] *Cf.* GAUCH/SCHLUEP/SCHMID, OR AT, 2020, N 1791 ("If several persons have jointly caused some damage (proper solidarity) *their joint and several liability is expressly provided for in Art. 50(1)*" (emphasis added)); FELLMANN/KOTTMANN, Swiss Tort Law, vol. I, 2020 N 2731 ("Art. 50(1) explicitly establishes the basis for joint and several liability of multiple liable parties under tort law."). *See also* WERRO, La responsabilité civile, 2026, N 1859 with references to further authors in the same sense, notably BRUNNER, Die Anwendung deliktrechtlicher Regeln auf die Vertragshaftung, 1991, N. 312, who states clearly that Article 50(1) is a norm that specifically imposes ("creates")

aligned with the SFSC's longstanding caselaw, which, in the past, had never met with any notable scholarly criticism.

In sum, Professor Tercier's view of Article 50(1) is not in line with either Swiss caselaw or prevailing academic thought, and his criticisms of the District Court should therefore carry no weight.

Professor Tercier likewise argues that the jury's moral damages award is inconsistent with Swiss law. As discussed above, his statement is incorrect. Swiss courts (or here, the jury) have discretion to set moral damages and the law provides no maximum limit. To try to compare an American jury's award to past awards issued by Swiss courts is neither a useful nor a necessary exercise.

---

liability on the accomplice and on the instigator ("eine haftungsbegründende Norm"); *see also*, WEBER, Kausalität und Solidarität - Schadenszurechnung bei einer Mehrheit von tatsächlichen oder potenziellen Schädigern, HAVE 2010, p. 123, who talks about the "extension of the scope of liability" ("Ausweitung des Haftungsumfangs") imposed by Article 50, explaining that liability here is based on collective fault only, and not on that of the individual ("Die Haftung knüpft am kollektiven Beitrag an und nicht an der individuellen Verantwortlichkeit"). The same is true for PERRITAZ, L'art. 50 al. 1 CO: une norme qui fonde la responsabilité?, in: PJA 2018, p. 795 ff., where he analyses the scholarly work of Brunner and Weber as well as the caselaw and concludes that Article 50 imposes liability on the accomplice and the instigator that otherwise would not exist. Approving the Kashef decision, NUSSBAUMER-LAGHZAOUI, Responsabilité plurale, responsabilité éloignée et dilution de responsabilité: La causalité à l'épreuve d'un monde complexe, La Semaine judiciaire, p. 391 ff. (2022), comes to the same conclusion.

## CONCLUSION

For the reasons set forth above, the Court should hold that the District Court made no error in its interpretation or application of Swiss law.

August 28, 2026

Respectfully submitted,

*/s/ Nicholas J. Jacques*

Agnieszka M. Fryszman
Nicholas J. Jacques
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Ave., NW, Suite 800
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
njacques@cohenmilstein.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 6,782 words and thus is in compliance with the type-volume limitation set forth in Second Circuit Local Rules 29.1(c) and 32.1(a)(4)(A).

August 28, 2026

Respectfully submitted,

*/s/ Nicholas J. Jacques*

Nicholas J. Jacques
Agnieszka M. Fryszman
COHEN MILSTEIN SELLERS & TOLL LLP
1100 New York Ave., NW
Suite 800
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
afryszman@cohenmilstein.com
njacques@cohenmilstein.com