# 26-341

## United States Court of Appeals
## For the Second Circuit

ENTESAR OSMAN KASHEF, TURJUMAN RAMADAN TURJMAN, ABULGASIM SULEMAN ABDALLA,

*Plaintiffs-Appellees*,

v.

BNP PARIBAS,

*Defendant-Appellant*.

[*Caption Continued on the Inside Cover*]

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUITHERN DISTRICT OF NEW YORK

No. 16-cv-3228, Judge Alvin K. Hellerstein

**BRIEF OF ROGER P. ALFORD, MICHAEL J. BAZYLER, WILLIAM DODGE, AND BURT NEUBORNE AS *AMICUS CURIAE***

*Of Counsel*
Michael J. Bazyler

Prof. Michael J. Bazyler
*Attorney for Amicus Curiae*
ALC Lawyers
303 N. Glenoaks Blvd., St 200
Burbank, CA 91502
MBazyler@ALCLawyers.com
(310) 926-0149

ALFADEL MOSABAL, ABUBAKAR ABAKAR, SIAMA ABDELNABI HAMAD, ABBO AHMED ABAKAR, HAWA MOHAMED OMAR, FATIMA ABDALLA ABDELRAHMAN, NYANRIAK TINGLOTH, REVEREND ANDERIA LUAL, NICOLAS HAKIM LUKUDU, JOHNMARK MAJUC, JOSEPH JOK, HALIMA SAMUEL KHALIFA, AMBROSE MARTIN ULAU, SANDI (SUNDAY) GEORGARI MARJAN, SHAFIKA G. HASSAN, JANE ROE, CLARA E. TABOR, SARA NOURELDIRZ ABDALLA, AMIR AHMED, ISAAC ALI, KUOL SHBUR, JUDY ROE, ESAMELDIN N. ABDELAZIZ, HAMDAN JUMA ABAKAR, ROSA BOL RING, ADIEL ABAKER ABDALLA, ARBAB KHAMIS KHATER, ISMAIL IDRIS ADAM, FATMA OMAR AHMED, HAWA ISMAIL, ADAM ABAKAR HISSEIN, ACHAN ACHOR DUMO, MONG PETER LAM, JACOB LOK GATKOUTH, MAHDI ALTIGANI ALNOUR, HAYDAR AHMED ABDALLA, MAHMOUD MOHAMED IBRAHIM, RABAB AHMED EL SAYED ADAM, HANADI ABAKER MOHAMED, AHMED JUMA AHMED, ATONG D DENG, ABDALLA MOHAMED IDRISS, MOHAMED OMER SALIH HASABO, OMAR BAHER SIBOURU, ADAM ABDELRAHMAN ISMAIL, ABDULMAJID A GAMAR, MUTAZ MOHAMED MAKI KOMI, GAFFAR HAMID ALI NOURELDEIN, NOHA GAFFER HAMID ALI, FATHIA YAGOUB ELNOUR BAKHAT, SADAM Y MOHAMED, KHALID SAYFELDIN KRAMELDIN, SALAH IBRAHIM AHMED, SOMIA ALI ALI, ABDELRAHMAN HASSAN AHMED, MOHAMED ADAM OSMAN MOHAMED, ELHADI HAROUN ADAM, YAHYA MUSA ABDALLA, ABDALRAHMAN OSMAN FADOUL, ABDELKARIM MOUSA OMAR, KUIER AGUER ATEMDENG, SAID ABOBAKAR AHMED ABDALA, ABDELRAZIQ MUSA HUSSEIN, MUSTAFA ALNOR, MOHAMED I ABOH, ALI OMER AMIR TAGAL, IBRAHIM FADL JUMAA, ABBAS KHAMIS HAROON, ZEINAB ABBU, YOUNES OMAR ADAM, IBRAHIM FADEL HUSSEIN, KALTHOUM ARBAB MUSA, MUSA S ADAM, ABDULATIF ISAAK, MARYAM BABO, BABIKER ABDALLA ISAAC, IBRAHIM ALNOR JUMA, ABOUD ISSA SALEH, OMER AMIR BAKHIT, NORELDIN ADAM OSMAN, EISA MOHAMED, IDRISS ADAM MOHAMED DAWOUD, ABDELAZIM ADAM AHMED ABDELMOULA, RAMADAN YAHAI HAROUN, ABDUSHAFAIE ABUBAKER AHMED, NAWAL ABAKR, MUSA MOHAMED AHMED, MUSTAFA ISAAC MOHAMMED, HAROUN MOHAMED IDRIS, ABDALLA OMER AMIR, HALEEMA HARSWON ABDALLA, ABDELGADIR MOHAMED ABBAKER, MUSA BABIKER ALI HUSSEIN, ABDELKARIM MOHAMED TOGOL B BAKHIT, MOHAMED ABDALLA MOHAMUD, HASSEN A MOHAMED ISMAEL ISMAEL, YAKOUB A YAKOUB, SALEH MOHAMED AHMED, YAGOUB OMER ELSHEIKH, SHADIA MOKHTAR HAMAD ABDELRHAMAN, ISMAIL ABBAS, MARIA ADAM SALIH, JAMES THON ALEER, MALUAL MANYOK DENG DUOT, AMIR SULEIMAN SHAWKAR, YOR CHOL YOR, MORWEL MATHIANG DENG, THON MAJAK DENG, ISHAG OTHMAN ADAM AHMED, SULEIMAN MOHAMED SALEH, JOSEPH AJEO MOILINGA, KRISTENA PETER RUFAEL, ELAF RUFAEL, NOURELDIN MAHDI ABDALLA ELTOM, ARBAB ABDALLAH ADAM, MOUSTAPHA IBRAHIM MAHAMAT, SAMIA ARBAB ABDURHAMAN, HAMRA IBRAHIM FADOUL, DJOUMA ARBAB ADAM, MATAR MAKINE ABAKAR, YAKUB HAROUN ABDULMOLA, HALEIMA NASRALDEN ABDELMAWLA SHERF, YAHYA KHAMIS, ANWAR HAMED ELNOUR, HASSAN HADO IBRAHIM HASSAN, YOUNESS HASSAN, MOHAMED ADAM ABDALLAH, ABDU MOHAMED, AHMED ARGA BAKHIT, MOHAMMED DAUD ARBAB, ADAM BABKER IBRAHIM, MOHAMED ISHAG, ADAM ZAKARIA JUMA, MARIAM Y. YAKHOUB, SALIH MOHAMED EISSA, SAMIA ABDELRAHMAN, ABDELRAHMAN ADELKARIM, ADAM ABDALLAH BAKHAT, IDRIS ABDULRASUL ADEM, BUSH ZAKARIYA MOHAMMED, EHSSAN ALTAHIR SABIL, IBRAHIM MOHAMMED ADAM, MUBARAK OMAR WADI, JUMA SEIF SHAIBU, ABDELRAZIG ADAM DAHIYA, ABDULKARIM ALI IBRAHIM, AKUEIN AWAN KUETH, AMIRA EL DENG, HOUZAIFA AHMED, AISHA ADAM ABUBAKAR, NADIA YAKUB, DAVID MATTHEWS GERI–ORIMATEO, ZARA IBRAHIM MAHAMAT, ABDELRAHIM OSMAN BASHIR HASSAN, ADAM ABDELKARIM ADAM HAROUN, MUBARAK A. MOHAMED, MARY DENG, KALTUM JUMA ZACHARIA, MONA OSMAN ABDELRAHMAN HASSAN, SULEIMAN

ABDALLA ISMAIL, LAILA IBRAHIM ABBAKER, MOHAMED IBRAHIM AHMED, RODA ABDALLA SULEIMAN, ZUHAL FADL, ABDELKARIM ADAM ADAM AHMED MUSA, ADAM AHMED ABUBAKAR, JOHN ALIER LEEK YEN, ABDULKARIM AZARAK AHMED, DAVID BUOTH, ABDELMONEIM MOHAMED KORSI, AKOL CITHEC MACAR AKOL, FATIMA M. ABDELLA, ABELWAHAB GUMAA, SHAMS ELDIN ADAM, ELNAKHEIL BASHA DARA, MICHAEL PETER ABA, MAYEN THON DENG AYUEL, IBRAHIMA ADAMOU, VIOLA PAUL, AHMED TOM ABDALLA SAIEED, YAIA ABAKAR ABRAHIM, VIOLA JOHN DIRI JOSEPH, RAMSEY RENBY SEBIT, AHMED SAIEED, ADAM MOHAMED IBRAHIM, ABBASS AWAD ADAM ALI, NUR AL HUDA ABUBAKAR, NYAKOACH PETER LAM, HEIDER ABULGASIM SULEIMAN, CLEMENT JOSEPH WANI MOJUS, ADIER M KUDUM AWEL KWAI, HATIM ABDALLA ADAM, ABDELGABAR MOHAMED MOHAMEDIAN, LUAL RIAK MARIER ADEIM, REBECCA NYAKOTA NYOACH, LAM THOT MUANG, SAMUEL MATHIONG REEC, TABESA AKON YUOL, GUOT KARLO KEN, ALI ABAKER HASSAN, BUOL MAYEN JOK, LEWIS ALFRED UTU BARUD, ADAM KHAMS ARBAB, MOHAMED ISSA SULIMAN ABDALLA, NYADUOP PETER LAM, NYABEL LAM THOT, MOHAMED ABBASHER MHDI, DENG DENG REYAK, ADAM HARI OMER ABU, GATLUAK PETER LAM, DENG YEL AKOL DENG, YUSSIF MOHAMMED SABIL, SALAH BAKHET BAKHET, NYBOL DENG REYAK, AHMED M ABKER, MUSA MOHAMED ARJA, MOUSSA BABIKIR ABAKAR, MAYSA OSMAN ARBAB, NOORELDIN OMER ALI, HAROON A BATI, ABDALLA SULIMAN ABAKAR, IZZELDIN SALEH AHMAD IBRAHIM, HAROUN HASSAN, DIYO JOK, IBRAHIM ADAM HASSAN, MAHASIN ELNOUR ADAM, ABDELMALIK HUSSEIN YAAKOUB, MOUSSA TEJEDDINE MOHAM AHMAD, RASHIDA HAMED AHMED BALLAH, ADAM JUMAA ARBAB, SOULEYMAN ABDELKERIM MAHAMAD, MICHAEL ADUUT PARENG, MARY JOHN DERY JOSEPH, NASRIN ANGLO MOHAMED, ZAHRA MOUSSA, DIING RING DIING YOL, FLORA AVURU, RODA LOGA, SABIT BARAKENYI KUBARI, AMEER AJAK NYHAL, NASIR KABASHI NASIR, IBRAHIM BAKHAT, AHMED ADAM ARBAB, YOUSIF KHALIL SULIMAN, JOSEPH G GAMUNDE, ISMAIL ISAAK ADAM, MUNAZIR ABDULLAH BAKHIET, GABRIEL CHARLES RIAK, CHARITY LOWOH, AMNA MOHAMED HASSAN KHALIFA, SAMYA A. HARAN, JAMES KADIN, ABDALLAH OMAR IBRAHIM, ISHAG ADAM GUMA MOHAMED, ADAM YACOB HAMID, ZEINAB AHMED MUSA ABBAS, KAMAL ADAM ABDULRAHMAN, MOHAMMED DABIYO ADAM, BABIKER ISMAEL ABDAHMMLLAH ELNOUR, ESTER PETER BEYAL LUWAL, MAWADA IBRAHIM ALI BAKHAT, IBRAHIM A ALI, MALKA ADAM ARBAB, KALTOUM FADUL MUSTAFA, KHALID MOHAMED ALI, DUAL D LUAL, ADAM ABAKER ABDALLA, ABDLAZIZ ALI YAGOUB, TIMANE ISSA WAR, JAMES AYUEL REHAN, ISRAA IBRAHIM AHMED, SAMIA ABUBAKER ABDALLA MOHAMED, AHMAD ALI ASHEKH, ALSADK HASSAN ADAM, ABUBAKR ALDOUM ADAM MUSA, MANAHIL IBRAHIM ALI, SANTINO RIAK AKUEI AJAK, MOHAMED IBRAHIM KAMBAL, YOUNES SALEM OMAR, SUKRAH M ELDHAI, ISMAIL MOHAMED ABDELMULLA, ABUBAKAR ALI ZAKARIA, MAHAMAT IBRAHIM ARBAB, JAKLIEN FARAH, AHMED A ISAAK, ASMA M HUSSEIN, ELNOUR HAROUN BABIKER ALI ELRASHID, MONIKA MAKUER MAJOK DOMINIC, MAYOM RIAK MABOR, LORANS OUJIT LOUAL, ANESA SIMON AJEUTH, FANNE ABDELNABI, ABBAS KAMSOR IBRAHIM, YACUOB ADAM OUMAR, ABDALLAH MOHAMMED HASSABANABI, USMAN ARBAB SULAEMAN, NOEL JADA LAKO, JAFAR HARRY JUMMA HASAPALLH, KHALID KHATER MOHAMED ALI, ALSADIG J SABIL, NEHAL GIBREIL, MAWAHIB ABBO, MOHAMEDALMURTADA H ABDALLA, MUSA YAGOUB, YOUNIS MOHAMED MOHAMED, AMONAH ISMAEL, MAHMOUD HAMED ISSA, ABDULRAHMAN ABAKAR, TAGWA IBRAHIM YAHYA, MOHUSSIN ABAKAR, ABDULRASUL ADAM AHMED, AMAN MIHEMEED, YAHIA ADAM SHOGAR ATIA, MOHAMED ISMAIL YOUSIF, DAHIYA YACUB ADAM, MOHAMED AHMED MOHAMED, MALIK KHATAR MALIK, DOW HUSSIEN GASIM, ABDELAZIZ BAKHEIT, HABALDEEN ADAM HASSAN IDREES, YOSEF MOHAMED BAKHAT

ABDALLA, ABDULRAHMAN ALNOUR GONGE, FATIMA TEGANI ALI, REMAZ ADAM, AHMED ALSADIG MOHAMED ABDELKARIM, MARIAM OMER KHAMIS, BUTHAINA A AHMED, MAGDI NOURALDIN YOUSF IBRAHIM, BUTRUS ALDO GWAKE LAZARUS, ANNA SERENO MODI, MARTHA AGUEK JOK, ADIL BASHAR ALI ADAM, SALAH MOHAMED KHATER AHMED, REBECCA ATHIENG DENG, YOUSIF MOHAMED, YAHYA ABDALLA JUMAA, ACHOL A AJAK, RHODA YAR ALIER, MOHAMMED KAMALELDIN HAMAH ALI, LUETH M YAK, ADAM ISMAIL MOHAMMED OMER, HAMADI YOUNIS AHMED ADAM, FADLALLA ADAM IBRAHEM MOHAMMED, YASIR RIZIG HASSAN, FATHIYA ABDELDAYIM, EMADALDEEN ALI SWAR BASHIR, MICHAEL M DUT, AMILIYA S DORI, ABDELRAZIG GUMA SULIMAN MOHAMED, NAMAT OSMAN YAGOUB, SALADIN AHMAT HAROUN, MUBARAK ABAKAR MOHMMED, ADAM YAHYA OMAR, SAFIYA AHMAT HAROUN, AWATIF IBRAHIM ISSA, MONIR AHMED ABDALLA, ADAM MOHAMED ABDALLA AHMED, HASSAN ISSACK ABDALLA, DFAALLA BASHIR DFAALLA, MOAWIA ABDELRAHMAN I. ABOH, EBTESAM OSMAN, BASHIR D IDRISS, FAIZA SABIL MOHAMED, SAMUEL GUYA LOBURI, GAFAR IBRAHIM YAGOUB, NABEEL A KHAMIS, MUTASIM IBRAHIM ABDALLA MOHAMMED, MONICA H TIMON, MAGDI YAHIA YUNIS, IBRIS AMIN, KARIMA ABRAHIM, ALGEZAFEE MOHAMED HAMID HAMID, ZAINAB BABIKER ABDELMA HASSAN, ZAHARA MOHAMED HUSSEIN, AGOK K GARANG, MOHIELDIN DAWED OMER, ROSE NAJORE HALISTO, NOURALDEIN ABAKER HOSS BAKHT, MOHMOUD IBRAHIM ABDULRAZIG, ABDALLAH ADAM TAHIR ADAM, HAMDI IBRAHIM AMIR, SULIMAN ADAM, MUBARAK YAGOUB IBRAHIM RAHMA, MUSTAFA MOHAMMED ALI, OMER ADAM OMAR, AHMED IBRAHIM YUSUF, HUSSIEN BASHIR HAROUN ADAM, RASHID HUSSEIN YOUNIS IBRAHIM, NOURDINIE MAHAMAD YUNIS, GAMAL ADAM YAGOUB HASSAN, MADIBO ADAM HASSABLLAH MADIBO, SALAHELDIN IDRIS YOUNIS SENIEN, AMER MOHAMMED BAKHT MENAWY, ADAM A IBRAHIM, NYANTHIEC JAM AWEL, NORALDIEM AHMED ISMAIL, LADO YANGA JURKIN, MUNA YAQOUB MOHAMED, AHMED ABDULRASOUL MOH MATAR, BAHARELDIN MOHAMMAD OMER ABDALLA, ABDU NORAIN MOHAMED, MUOTASIM MUSA ALSAFI, MAHSIM ABAKAR ISMAIL, MOHAMMED H KHATER, AUAR IBRAHIM YAHYA, KHALED OSMAN, YONIES HASSAN, ABDALLAH ALI ELNOUR, JUR KUCHA, MOHAMMED IBRAHIM, HANAN MUSA TAGAL, ABDALKARIM ADAM MOHAMMED IZZALDIN, KAMAL AHMAD MAHMOUD, MARY ABIECH AKOON, ARBAB ISMAIL IBRAHIM, MOHAMED ADAM MOHAMED JUMA, MUSAB ARBAB, ZAHARA YEKISUK, MAHAMAD ISMAIL IBRAHIM, ADAM IBRAHIM ISMAIL, MONICA ALUEL AYUEN, MOHAMMED MAHMOUD WARA, EMAN ALI, ABOBAKER S IBRAHIM, ATIA KAFI KUJUR, ABUALGESEM A ABDALMOULA, IBRAHIM AHMED ALI, ABBAKAR EL SONOSI MOHAMED, JOHN MALWAL, MOHAMED O FADHL, YASSIEN DALEEL, MARY DAWOD L. LAKO, AMAN GAI GARANG DENG, AMNA KORASHY, EKALINO M AWOUR KUR, MAHMOUD ABDALLA ADAM ABDALLA, HAFIZ ABDULKARIM WADI, SAMUAL MUSA ABDALGADIR, MUBARAK SULIMAN RAHMA, YASMEEN MUSA ABELGADIR, ABDULRAZIK MAHDI, ABDELKARIM OSMAN HASSAN, BABIKER ABDALLA HAROUN ABDALLA, ABDALLAH ISHAG, ABDELBARI ELTIGANI M ADAM, ELSHAZLY RAHMA, ISMAIL AHMED ALNOUR, MANAL MUSA MUHAMED–AHMED, HASSAN AWAAD ABDALLAH, AMANI SHAREIF A. MOHAMED, MUTASIM A ALI AHMED, SAFA ALI ARBAB, AMIR ARBAB HASSAN MOHAMED, MOHAMED YAGOUB ADAM, ALI ADAM MOHAMMEDIN BHAR, HANAA AHMED ABAKER IBRAHIM, MAHGOUB ABDALLAH DAFALL KHDIR, EKRAM IBRAHIM HAMED, ABEER HAROUN MOHAMMED HASABALLAH, SAYEDA ABDALRHMAN FASHIR, A. B., SAFA ALI IBRAHIM ABDELKARIM, ANDERIA AROK LUAL, SAIDA SHARAFEFLDIN MORSAL KHAMIS, ALI AHMED ELTAYIB ELFAKI, SADIYA M MOHAMED, MUSA ABDALWAHAB BABKER KAMAL, AHMED KHAMIS MOHAMED HAROUN, C. D., NYANGOK DANIEL DONGWAY, HAROUN HASSAN HAROUN, MAHA SABIR ABDALLA, ABUBAKAR IYDAM

IBRAHIM MOHAMMED, SAMRA ABBAS IBRAHIM MOHAMMED, AZAHIR ALZAIN ADAM, KHALID HAROUN, ALSADIG SALIM TUKKA SABUN, ANDREW AKECH JOHN JOK, AWDIA AMIR ABDELBAGI, VICTORIA ADHAR AGUEK, ELTEGANI AHMED NHAR BERKA, YOSIF ABUALQASIM KHATIR OMER, SAMIA ALTOM TIBIN OMER, ZAINA HAMID GARELNAB ELTAHIR, SALIH INTISAR ABDELRAHMAN, GATAR GALIA HAMED ADAM, AHMED ISMAIL A. WADI, E. F., ATEM JOHN THUE AGUER, SAMIRA MOHAMMED ADAM IBRAHIM, FAISEL ABDURHMAN ADAM, OMDA A AHMED, ROSE BAGAZI LORI, MOHAMMED MOHAMMED AHMED, ZAKAREYA MOHAMED TARBOUSH, OMAR ABDELHAMEED, ALIET MALEK ALIER, TAHA HASSAN ISHAG, IBRAHIM A ISSA, AHMED ABDULKARIM WADI ISMAIL, AREK GARANG BAK LUAL, ZAKIA HAROUN SULYMAN ADAM, MAHMOUD MUKHTAR ELTAYB, OMAR HANDOGA KHATIR NAIR, ABDULLAH ABDULMAHMUOD ABDULMAHMUOD, ANWAR MOHAMMED DAFALLA, AHMED ADAM ELOMDA MOHAMED, AMINA OUSMAN IBRAHIM, AZIZA KHAMIS IBRAHIM, HAWA IBRAHIM JUMA HAROUN, SUMAIA IBRAHIM ALNOR JUMA, NOURACHAM OUMAR, ALTAYEB MUSTAFA ADAM WAR, BUTHAINA AMBADA, AMANI ABDALLA IBRAHIM, MOHAMMED ISMEIL JOMA MOHAMMED, ABUBAKAR ADAM OBAID BAKO, EMADALDEEN SULIMAN IBRAHIM, MAHMOUD ELRAYAH GUMAA, FAISAL ADAM IDRIS, MOUSAB TOGOL, KHALID ABAKER MUHAMED TAIRAB, ABDULAZIZ MOHAMMED ABDALLA, SIHAM ARBAB ABDALLAH, OSAM BAKHIT MUSA SAM, MUHIEDDIN ABELRAHMAN I. MAHMOUD, MOHYALDEEN ABDRHEEM ABAM ABAKAR, ACHOL GARANG AWUOL AKOIH, ABUK MATHIANG MADUT, HANADI ZAKARIYA IBRAHIM, GEHAD A ABDELRASOUL, MUNIRA HARON ALTOM MOUSA, AMEERA BASHEER HAROUN, HAITHAM ABUBAKAR ABDELMAILK, HAMED YAGOUB ADAM, NAJWA ADAM ISA JUBARA, OSMAN MAHAMED ISMAIL ABDELRAHMAN, MAHMOUD OMER ISSAK ADAM, SALMA ABDELKARIM ALI, ABDELRAHMAN YAGOUB ABDELMALIK,

PLAINTIFF - CONSOLIDATED PLAINTIFFS,

V.

BNP PARIBAS NORTH AMERICA, INC., A DELAWARE CORPORATION, DOES 1−10, BNP PARIBAS, SA NEW YORK BRANCH, A FOREIGN BRANCH, BNP PARIBAS US WHOLESALE HOLDINGS, CORP., FKA BNP PARIBAS NORTH AMERICA, INC., A DELAWARE CORPORATION,

DEFENDANTS.

# TABLE OF CONTENTS

Table of Authorities ........ ii

Statement of Interest of *Amici Curiae* ........ 1

Summary of Argument ........ 4

A. Sovereignty Concerns are Untimely and Unpersuasive ........ 5

B. Rule 44.1 and Respectful Consideration ........ 9

C. The District Court's Response to the Letter ........ 11

D. The District Court Consideration of the *Animal Science* Factors ........ 19

Conclusion ........ 26

## TABLE OF AUTHORITIES


**Cases** Page(s)

*In re Grand Jury Subpoena*,
912 F.3d 623 (D.C. Cir. 2019) ....................24

*In re Holocaust Victim Assets Litig.*,
105 F. Supp. 2d 139 (E.D.N.Y. 2000) ....................1, 6

*Kashef v. BNP Paribas S.A*
2021 WL 603290,
Case No. 16 Civ. 3228 (AJN), (S.D.N.Y. Feb. 16, 2021) ....................16, 20, 23

*Kashef v. BNP Paribas S.A*
2024 WL 1676355,
Case No 16 Civ. 3228 (AKH), (S.D.N.Y. Apr. 18, 2024) ....................16

*Kashef v. BNP Paribas S.A.,*
442 F. Supp. 3d 809 (S.D.N.Y. 2020) ....................16, 23

*Kashef v. BNP Paribas S.A.*,
925 F.3d 53 (2d Cir. 2019) .................... *passim*

*Petersen Energia Inversora S.A.U. v. Argentine Republic*,
172 F.4th 120 (2d Cir. 2026) ....................19

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,
895 F.3d 194 (2d Cir. 2018) ....................19

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*,
585 U.S. 33 (2018) .................... *passim*

**Rules**

Fed. R. Civ. P. 44.1 ....................9, 10

Fed. R. App. P. 29(a)(4)(E) ....................1

**Regulations**

5 C.F.R. § 2635.502(a) ....................26

## Statement of Interest of Amici Curiae[1]

The *amici curiae* are Roger Alford, a former U.S. government official, Michael Bazyler, a leading scholar on the Holocaust, William Dodge, a leading scholar of international comity and choice of law, and, Burt Neuborne, a leading expert on civil liberties and the Holocaust, writing in support of the Plaintiffs. They are responding to allegations that the lawsuit against BNP Paribas constitutes a challenge to Swiss sovereignty and that the district court failed to give respectful consideration to the Swiss Ambassador's statements regarding Swiss law.

Roger Alford is a Professor of Law at Notre Dame Law School where he teaches Transnational Civil Litigation, Complex Civil Litigation, and other classes relevant to these proceedings. He served as Senior Legal Advisor to the Claims Resolution Tribunal for Dormant Accounts in Zurich, Switzerland, the administrative body established in 1997 to distribute the settlement funds provided in the *Holocaust Victim Assets Litigation* under the supervision of the Special Master appointed by Judge Korman of the Eastern District of New York.[2] He is the co-editor (with Michael J. Bazyler) of *Holocaust Restitution: Perspectives on the Litigation and Its*

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify that no person or entity, other than amici, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

[2] *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 154–158 (E.D.N.Y. 2000).

*Legacy* (2006). He was Deputy Assistant Attorney General in the Antitrust Division of the Department of Justice from 2017 to 2019 in the first Trump Administration and helped draft the United States *amicus* brief in *Animal Science* that suggested the exact factors for respectful consideration adopted by the Supreme Court.[3] He served as Principal Deputy Assistant Attorney General of the Antitrust Division of the United States Department of Justice in 2025 in the second Trump Administration. He is an expert on Rule 44.1 and the use of foreign law to challenge human rights abuses in United States courts.[4]

Michael Bazyler is a professor of law and the 1939 Law Scholar in Holocaust and Human Rights Studies at Chapman University. He has held fellowships at Harvard Law School, the United States Holocaust Memorial Museum, and Yad Vashem in Jerusalem, where he was also the Baron Friedrich Carl von Oppenheim Chair for the Study of Racism, Antisemitism and the Holocaust. Before joining Chapman in 2008, he taught for 25 years at Whittier Law School. He is the author

---

[3] *Compare* Brief of the United States as Amicus Curiae Supporting Petitioners at 21, *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33 (2018) (No. 16-1220) (the factors "are too diverse to be reduced to a formula or rule, but the relevant considerations include the interpretation's clarity, thoroughness, and support; its context and purpose; the nature and transparency of the foreign legal system; the role and authority of the entity or official offering the interpretation; its consistency with the foreign government's past positions; and any other corroborating or contradictory materials") *with Animal Sci.*, 585 U.S. at 34.

[4] Roger P. Alford, *Human Rights After* Kiobel: *Choice of Law and the Rise of Transnational Tort Litigation*, 63 EMORY L. REV. 1089 (2014).

of seven books addressing the Holocaust, genocide and restitution, public international law, international human rights, international trade, and comparative law. He is one of the foremost scholars on the Holocaust and the Law. His book *Holocaust, Genocide and the Law: A Quest for Justice in a Post-Holocaust World* won the 2016 National Jewish Book Award.

William Dodge is Lobingier Professor of Comparative Law and Jurisprudence at the George Washington University School of Law. He served as Counselor on International Law to the Legal Adviser at the U.S. State Department from 2011 to 2012 and as a Reporter for the American Law Institute's Restatement (Fourth) of Foreign Relations Law from 2012 to 2018. He currently serves as a Reporter for the second phase of the Restatement (Fourth) and an Advisor for the Restatement (Third) of Conflict of Laws. Among other topics, he has written extensively about international comity and choice of law.

Burt Neuborne is the Norman Dorsen Professor of Civil Liberties Emeritus and Founding Legal Director of the Brennan Center for Justice at NYU School of Law. He is a nationally recognized civil liberties lawyer who has litigated numerous cases before the Supreme Court and hundreds in state and federal courts. Since 1996, Professor Neuborne has served as principal counsel in litigation recovering property wrongfully taken from Holocaust victims by Swiss banks and German corporations during the Nazi era. That litigation resulted in more than $7.5 billion being

assembled for distribution to approximately 450,000 Holocaust victims and their families worldwide. A federal court in the Eastern District of New York appointed Professor Neuborne to oversee the $1.25 billion Swiss bank settlement, and the United States appointed him to the Board of Trustees of the German Foundation "Remembrance, Responsibility and Future," which administered the $5.2 billion German slave-labor settlement.

**Summary of Argument**

The Swiss government objects that this lawsuit constitutes a challenge to Swiss sovereignty because it seeks to interfere with the ability of Switzerland to regulate the conduct of its own nationals within its own territory. That is almost the identical unsuccessful argument the Swiss government made during the *Holocaust Victims Asset Litigation.* This argument has not been raised by Defendant, BNP Paribas, S.A. before, and if they did so now it would be untimely.

In determining foreign law under Rule 44.1, the court may consider any relevant material, including primary sources such as statutes, administrative material, and judicial decisions, and secondary sources such as expert testimony and other probative information. If a foreign government provides a statement as to the interpretation of its laws, a court should give that statement appropriate weight depending on the circumstances. In this case, on the eve of trial, the Swiss Ambassador provided a short letter ("Letter") that summarized the detailed and

lengthy positions of Defendant's Swiss legal experts. The Defendants relied on that Letter for the remainder of the proceedings. The district court considered the legal positions raised in the Letter in drafting the jury instructions, in ruling on the burden of proof, in pronouncing some legal points raised in the Letter as untimely, and in denying the Defendants' Rule 50 motion for judgment as a matter of law. A review of the pre-trial and post-trial hearings, briefs and orders confirms that the district court considered all of the *Animal Science* factors. It gave appropriate weight to the Ambassador's Letter, but gave greater weight to the decisions of the Swiss Federal Supreme Court. As the Supreme Court emphasized in *Animal Science*, "the appropriate weight in each case will depend upon the circumstances; a federal court is neither bound to adopt the foreign government's characterization nor required to ignore other relevant materials."[5] That is what occurred in this case.

### A. Sovereignty Concerns are Untimely and Unpersuasive

The Swiss government has a difficult time reckoning with its history. The last time it was embroiled in controversy over Swiss banks' complicity with genocide was twenty-five years ago. The Swiss government commissioned a famous report—the Bergier Report—that found that during the Holocaust the Swiss were complicit in genocide, accepting looted gold, allowing Nazi war criminals to flee on Swiss

[5] 585 U.S. at 43.

railroads, camouflaging German business interests, using forced labor in Swiss factories located in Nazi Germany, assisting Nazi German firms to trade in stolen securities, and obstructing the return of securities from Jews and inhabitants of occupied countries.[6] When Holocaust victims sued Swiss banks in United States court regarding their Holocaust-era conduct, the Swiss government vigorously objected, arguing that the "continuation of these lawsuits would be inconsistent with proper respect for Swiss sovereignty under internationally recognized legal principles,"[7] and that "[t]he most effective and just means for dealing with these matters are in Switzerland, not in a United States court."[8] Notwithstanding these objections, the Swiss banks entered a settlement with U.S. plaintiffs mediated by Ambassador Stuart Eizenstat on behalf of the United States and agreed to distribute $1.25 billion to Holocaust victims under the supervision of a United States federal

---

[6] *See* Special Masters' Final Report on the Swiss Banks Holocaust Settlement Distribution Process at 52 (Mar. 28, 2019), *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) (No. 96-cv-04849-ERK-JO) (quoting Stuart Eizenstat's summary of Bergier Report in STUART E. EIZENSTAT, IMPERFECT JUSTICE: LOOTED ASSETS, SLAVE LABOR, AND THE UNFINISHED BUSINESS OF WORLD WAR II 180, 184 (2003)); *see also* JEAN-FRANÇOIS BERGIER ET AL., FINAL REPORT OF THE INDEPENDENT COMMISSION OF EXPERTS SWITZERLAND – SECOND WORLD WAR (2002).

[7] Gregg J. Rickman, *In Search of Justice: The World Jewish Congress and the Swiss Banks*, *in* WORLD JEWISH CONG. (Aug. 13, 1998), https://www.worldjewishcongress.org/en/85th-anniversary/in-search-of-justice-the-world-jewish-congress-and-the-swiss-banks.

[8] David Rohde, *Swiss Envoy Asks U.S. Judge to Dismiss a Suit Against Banks*, N.Y. TIMES (July 30, 1997), https://www.nytimes.com/1997/07/30/world/swiss-envoy-asks-us-judge-to-dismiss-a-suit-against-banks.html.

court.[9] Ambassador Eizenstat observed that his "bitter experience" dealing with the Swiss government showed that, unlike the German, Austrian, and French governments, the Swiss government never "recognized that the reputation of their private companies reflected on their nations' reputations."[10]

Just a few years after this historic settlement, Defendant BNP Paribas, S.A. was complicit in another genocide in part through the conduct of its Swiss subsidiary. The defendant in the criminal case agreed to pay $9 billion in settling claims brought by the United States for violations of U.S. sanctions laws aimed at halting the genocide in Sudan.[11] In announcing the settlement, United States Attorney General Eric Holder announced that "[t]his outcome should send a strong message to any institution – anywhere in the world – that does business in the United States: illegal conduct will not be tolerated. And wherever it is uncovered, it will be punished to the fullest extent of the law."[12]

The subsequent civil litigation reinforced the finding of the Defendant's

---

[9] *See In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d at 142–43; Special Masters' Final Report, *supra* note 5, at 61–74.

[10] Special Masters' Final Report, *supra* note 5, at 70 n.262 (quoting EIZENSTAT, IMPERFECT JUSTICE, at 341).

[11] *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 55–56 (2d Cir. 2019).

[12] *Attorney General Holder Delivers Remarks at Press Conference Announcing Significant Law Enforcement Action*, U.S. DEPT. OF JUST.: ARCHIVES (June 30, 2014), https://www.justice.gov/archives/opa/speech/attorney-general-holder-delivers-remarks-press-conference-announcing-significant-law.

complicity with genocide. The Plaintiffs' core argument was that "BNPP was illegally funding Sudan's commission of atrocities by avoiding U.S. sanctions put in place to protect the Plaintiffs and the purported class, knowing that the funds would be used by Sudan to continue the perpetration of atrocities."[13] In October 2025 a jury agreed, awarding three Plaintiffs over $20 million in compensation.[14] As with the Holocaust litigation, the Swiss government again vigorously objected to the U.S. litigation. As the Ambassador's Letter put it, "[t]he lawsuit . . . constitutes a challenge to Swiss sovereignty, seeking to interfere with the ability of Switzerland to regulate the conduct of its own nationals within its own territory."[15]

These broad sovereignty arguments are untimely and unpersuasive. The Defendant never filed a motion with the district court on the basis of these sovereignty concerns. In both the Holocaust litigation involving Swiss banks and this case the Swiss government objects to such litigation in United States courts as a violation of Swiss sovereignty. And in both cases the U.S. courts respectfully take such considerations into account, but concludes that they have a duty to resolve the

---

[13] *Kashef*, 925 F.3d at 62–63.

[14] Elena Vardon, *BNP Paribas Shares Drop After U.S. Verdict Over Alleged Role in Sudan*, WALL ST. J. (Oct. 20, 2025), https://www.wsj.com/finance/banking/bnp-paribas-shares-drop-after-u-s-verdict-over-alleged-role-in-sudan-d3aacc06.

[15] Order Regulating Proceedings at 3, *Kashef v. BNP Paribas S.A.*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 2, 2025), Dkt. No. 937.

cases over which they preside.

### B. Rule 44.1 and Respectful Consideration

The issue the Swiss Government is focused on is a narrow one: whether the district court misconstrued the Swiss Code of Obligations.[16] Appellate courts review this question *de novo* as a matter of law.[17] The subsidiary question of whether the district court appropriately considered and weighed all relevant material under Rule 44.1—including the statement of the Swiss Ambassador—is only relevant to the extent it bears on that question.

Under Rule 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."[18] In applying Rule 44.1, courts may rely on a variety of materials, including "[s]tatutes, administrative material, and judicial decisions"; "expert testimony" interpreting those primary sources; and "any other

---

[16] *See* Brief of Defendant-Appellant BNP Paribas at 6, *Kashef v. BNP Paribas S.A.*, No. 26-341 (2d Cir. May 22, 2026) (the alleged issue is "[w]hether the district court misconstrued Swiss law by: (a) treating a liability-*apportionment* statute as the basis for liability; (b) imposing joint-and-several liability on BNPP under the liability-apportionment statute even though the alleged primary tortfeasor (Sudan) could not be found liable under Swiss law; and (c) erroneously instructing the jury on the burden of proof and the elements of Plaintiffs' claims").

[17] *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 42 (2018).

[18] FED. R. CIV. P. 44.1.

information" that may be probative.[19] It may also give respectful consideration to the views of the relevant foreign government.[20]

The Supreme Court in *Animal Science* stated that in the context of applying 44.1, "the court may consider any relevant material or source . . . whether or not submitted by a party."[21] "A federal court should accord respectful consideration to a foreign government's submission, but is not bound to accord conclusive effect to the foreign government's statements."[22] The Court emphasized that the weight accorded to such statements by foreign governments depends on the circumstances. "[T]he appropriate weight in each case will depend upon the circumstances; a federal court is neither bound to adopt the foreign government's characterization nor required to ignore other relevant materials. Where a foreign government makes conflicting statements, or . . . offers an account in the context of litigation, there may be cause for caution in evaluating the foreign government's submission."[23]

The Court then offered the following guidance regarding respectful consideration:

No single formula or rule will fit all cases in which a foreign government

---

[19] 9A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2444 (3d ed. Apr. 2026 update).

[20] *Animal Sci.*, 585 U.S. at 36, 42–43.

[21] *Id.* at 36 (quoting FED. R. CIV. P. 44.1).

[22] *Id.*

[23] *Id.* at 43.

> describes its own law. Relevant considerations include the statement's clarity, thoroughness, and support; its context and purpose; the transparency of the foreign legal system; the role and authority of the entity or official offering the statement; and the statement's consistency with the foreign government's past positions.[24]

Finally, the Supreme Court prioritizes statements of law from the judicial branch over the executive branch. Drawing analogies to federal court determinations of state law, the Court stated that "[i]f the relevant state law is established by a decision of the State's highest court, that decision is binding on the federal courts. But views of the State's attorney general, while attracting respectful consideration, do not garner controlling weight."[25]

## C. The District Court's Response to the Letter

Applying *Animal Science* to the facts of this case, there is significant "cause for caution in evaluating the [Swiss] government's submission."[26] First of all, the Ambassador's Letter was filed in the context of litigation. Indeed, the Letter was filed one week before trial after ten years of litigation and over five years after the court had already ruled on legal issues relating to Swiss law discussed in the Ambassador's Letter. The Swiss are famous for always being on time, but one of the strongest reasons to give the Ambassador's Letter less weight is that it was woefully late. It could have had much greater utility had it been filed before the court had

[24] *Id.*
[25] *Id.* at 44 (internal citations and quotation marks omitted).
[26] *Id.* at 43.

ruled on almost all relevant Swiss legal questions.

Even if the Letter was submitted earlier in the litigation, it would have been of limited value. The Ambassador's substantive statements in the Letter about Swiss law were only a half-page long (less than 400 words in four paragraphs) and only cited two cases. More importantly, the content of the Letter was identical to the positions of BNP Paribas's legal experts. For example, on the burden of proof, one paragraph in the Ambassador's Letter simply summarized eight pages of the Defendants' expert report on burden of proof.[27] The Defendants' memorandum of law in support of its Rule 50 motion cited their own expert reports and the Ambassador's Letter repeatedly on the same points of law.[28] So when the court considered and weighed the Defendants' expert reports, it was also considering and weighing the positions of the Ambassador's Letter.

Despite good cause for caution given the timing and context of the Letter, there is ample evidence the court displayed respectful consideration to the Ambassador's Letter and gave it the appropriate weight. Upon receipt of the Letter, the court

---

[27] *Compare* Order Regulating Proceedings, *supra* note 14, at 2–3 (paragraph entitled "Standard of proof"), *with* Expert Report of Christoph Müller at 5–12, *Kashef v. BNP Paribas S.A.*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Aug. 1, 2025), Dkt. No. 813-1.

[28] Defendants' Memorandum of Law in Support of Rule 50(A) Motion at 1–3, 11–12, 25–26, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Oct. 10, 2025), Dkt. No. 998.

immediately ordered the parties to file comments regarding the Letter.[29] Following briefing from the parties,[30] the court held a status conference where the Ambassador's Letter was discussed on numerous occasions.[31] The court then issued an Order responding to the Ambassador's Letter.[32]

At the pre-trial conference on September 3, 2025, the court specifically addressed the Ambassador's Letter regarding the application of Swiss law.[33] The court noted that the Letter was "not terribly clear[]" and that the court "was not sure" that the Letter gave "an accurate summation" of Swiss law as applied to this case.[34] Later in the same hearing, in the context of the parties' disagreement regarding appropriate jury instructions, defense counsel raised the Swiss legal points presented by the parties' legal experts and the Ambassador's Letter regarding causation and accomplice liability.[35] The court agreed with portions of defense counsel's arguments and disagreed with others.[36] When defense counsel later tried to rely on

---

[29] Order Regulating Proceedings, *supra* note 14 at 1.

[30] Joint Brief of Plaintiffs in Response, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 3, 2025) Dkt. No. 942; BNPP's Response, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 3, 2025) Dkt. No. 941.

[31] Transcript of Pre-Trial Conference, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 3, 2025).

[32] Order Responding to Ambassador Heckner, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 3, 2025), Dkt. No. 943.

[33] Transcript of Pre-Trial Conference, *supra* note 30, at 45–47.

[34] *Id.* at 45–46.

[35] *Id.* at 67–75.

[36] *Id.*

a Swiss legal point raised in the Ambassador's Letter, the court incredulously remarked, "Extraordinary letter" and then asked counsel, "Who wrote it?"[37] Finally, when defense counsel continued to rely on the Ambassador's Letter, the court stated, "[t]he ambassador raised the point, and I issued a decision . . . rejecting it. . . . I've seen this argument before. It's been made before. I've ruled on it."[38] When defense counsel continued to press a dispositive legal point raised in the Ambassador's Letter, the court stated, "You had how many years since the case began since the pleadings were closed to make a 12(c) motion based on this ground? Did you do it? No. I'm not going to handle it now before trial."[39] In short, the court carefully considered the points raised in the Swiss Ambassador's Letter as presented by defense counsel, agreed with some points, disagreed with others, and rejected some dispositive legal points as untimely.

In a similar fashion, the court's Order responding to the Ambassador's Letter shows respectful consideration. The Order expressly states that "[t]he Court respects the Ambassador and his views."[40] The Ambassador's Letter argued that "[t]he lawsuit . . . constitutes a challenge to Swiss sovereignty, seeking to interfere with the ability of Switzerland to regulate the conduct of its own nationals within its own

---

[37] *Id.* at 92.
[38] *Id.* at 93.
[39] *Id.* at 96–98.
[40] Order Responding to Ambassador Heckner, *supra* note 31, at 1.

territory."[41] Defendants raised, and the Second Circuit rejected, similar sovereign defenses with respect to Sudan over six years ago.[42] Defendants could have raised a sovereign defense with respect to Switzerland at that time but chose not to do so. In response to the Ambassador's Letter, the district court responded that it was its "duty to determine the law of Switzerland to be applied in the case over which it presides, and to instruct the jury as to that law."[43] It is not disrespectful to a sovereign for a district court to fulfill its judicial duty following remand from an appellate court that ruled on such sovereign defenses.

The Ambassador's Letter further states that "the established laws of Switzerland and practice of the Swiss Courts in the interpretation of the laws in question should be carefully considered."[44] The Letter then stated its concern that Swiss law was "being interpreted in a manner that actually conflicts with Swiss law."[45] The Letter then offered four examples: primary liability, elements of complicity, requirement for tort liability, and standard of proof.[46]

In response, the district court emphasized that the court had already written

---

[41] Order Regulating Proceedings, *supra* note 14 at 3.
[42] *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58–62 (2d Cir. 2019).
[43] Order Responding to Ambassador Heckner, *supra* note 31, at 1.
[44] Order Regulating Proceedings, *supra* note 14 at 3.
[45] *Id.*
[46] *Id.* at 3–4.

extensively about Swiss law, citing its decisions from 2020, 2021, and 2024.[47] It then responded to specific points raised in the Letter and concluded that "[t]he other points argued by Ambassador Heckner have been the subjects of this Court's previous orders and opinions, and need not again be discussed."[48] The fact that the court declined to follow the interpretation of Swiss Law set forth in the Ambassador's Letter on topics that had already been raised by Defendants and decided by the court in previous rulings does not show a lack of respect for the Swiss government. It shows that the timing and context of the Letter were factors in how much weight it should be given.

After this pre-trial conference just before the trial, the court issued an order on the burden of proof that directly addressed a key legal point raised by the Ambassador's Letter. The Letter had argued that "the party alleging tort liability under the Swiss Code of Obligations must prove every required element and [] the standard for civil tort liability is 'full conviction,' which is otherwise known as 'strict proof.'"[49] This is identical to the arguments made by Defendants' Swiss law expert,

---

[47] Order Responding to Ambassador Heckner, *supra* note 31, at 1–2 (citing *Kashef v. BNP Paribas S.A. ("Kashef I")*, 442 F. Supp. 3d 809 (S.D.N.Y. 2020); *Kashef v. BNP Paribas S.A. ("Kashef II")*, No. 16 Civ. 3228 (AJN), 2021 WL 603290 (S.D.N.Y. Feb. 16, 2021); *Kashef v. BNP Paribas S.A. ("Kashef III")*, No. 16 Civ. 3228 (AKH), 2024 WL 1676355 (S.D.N.Y. Apr. 18, 2024)).

[48] Order Responding to Ambassador Heckner, *supra* note 31, at 3.

[49] Order Regulating Proceedings, *supra* note 14 at 3.

Christoph Müller, one day earlier: "The general standard of proof for all elements of Article 50(1) of the Swiss Code of Obligations is 'full conviction' or 'strict proof.'"[50] On September 8, 2025, the court considered the competing positions with respect to burden of proof and concluded that it would follow the approach of the Swiss Federal Supreme Court.[51] The court's conclusion that it would follow the Swiss Federal Supreme Court, notwithstanding the Defendants' expert witness and the Swiss Ambassador arguing otherwise, does not reflect a lack of respect for the Swiss government. It shows that it would give greater weight to the highest Swiss court than to the Swiss executive branch.

On October 10, 2025 BNP Paribas filed a Rule 50 Motion for Judgment as a Matter of Law.[52] In the Memorandum of Law in support of the motion, BNP Paribas cited the Ambassador's Letter almost a dozen times, and included almost all the key points of the Letter: primary and accomplice liability, elements of complicity, requirement for tort liability under Swiss law, and standard of proof.[53]

---

[50] Expert Report of Christoph Müller, *supra* note 26 at 6; *see also id.* at 8–10.

[51] Opinion and Order as to Burden of Proof at 6, *Kashef v. BNP Paribas S.A.*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Sep. 8, 2025), Dkt. No. 951 ("The holding of the Swiss Federal Supreme Court will be the basis of my instructions to the jury on all elements of the case.").

[52] Defendant's Rule 50(A) Motion for Judgment as a Matter of Law, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Oct. 10, 2025), Dkt. No. 997.

[53] Defendant's Memorandum of Law in Support of Rule 50(A) Motion, *supra* note 27, at 1–3, 11–12, 25–26, 30, 39.

At the January 7, 2026 hearing on Defendants' Rule 50 motion, defense counsel again relied on the Ambassador's Letter.[54] With respect to burden of proof, the court stated that the parties had already briefed the issue and the court had already issued a ruling on the matter.[55] The court then reminded the parties of the process that led to the ruling regarding standard of proof and how the court's ruling was consistent with the Swiss Federal Supreme Court's interpretation.[56] A similar colloquy occurred with respect to defense counsel's reliance on the Ambassador's Letter with respect to primary and accomplice liability.[57] The court reminded defense counsel that they were "now rearguing points that have been decided long before the trial."[58]

A review of the record reveals that the court showed respectful consideration to the Ambassador's Letter. The Ambassador's Letter raised issues that had been decided years ago, and long past the time period for dispositive motions. Nonetheless, the Letter was the subject of pre-trial briefing and a pre-trial hearing that influenced the drafting of the jury instructions, including points that aligned with the Letter and were favorable to defense counsel's positions.[59] The court also issued

---

[54] Transcript of Oral Argument at 54, *Kashef*, No. 16-cv-03228-AKH-JW (S.D.N.Y. Jan. 16, 2026), Dkt. No. 1087.
[55] *Id.* at 55.
[56] *Id.* at 55–58.
[57] *Id.* at 8–10.
[58] *Id.* at 10.
[59] Transcript of Pre-Trial Conference, *supra* note 30, at 67–75.

a pre-trial order addressing the position set forth by the Ambassador with respect to standard of proof and determined that it would follow the Swiss Federal Supreme Court instead.[60] The Letter also was subject to post-trial briefing and a post-trial hearing in which the court ruled that that topics raised in the Letter were untimely, given that they had been decided years before.[61]

### D. The District Court Consideration of the *Animal Science* Factors

Given this record, it is clear that the court showed respectful consideration to the Swiss government's interpretation of Swiss law as required by *Animal Science*. Although it was not required to do so,[62] it applied every *Animal Science* factor.

First, the court recognized that the Ambassador's Letter lacked the requisite "clarity, thoroughness, and support."[63] At the September 3, 2025 hearing, the court called the Letter "[e]xtraordinary" and questioned its source and authority.[64] The

---

[60] Opinion and Order as to Burden of Proof, *supra* note 50, at 6 ("The holding of the Swiss Federal Supreme Court will be the basis of my instructions to the jury on all elements of the case.").

[61] Transcript of Oral Argument, *supra* note 53, at 8–10, 54–58.

[62] This is consistent with the Second Circuit approach, which has applied the respectful consideration requirement of *Animal Science* without applying all of its factors. *See, e.g.*, *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, 208–09 (2d Cir. 2018); *Petersen Energia Inversora S.A.U. v. Argentine Republic*, 172 F.4th 120, 133–42 (2d Cir. 2026).

[63] *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 43 (2018) ("[R]elevant considerations include the statement's clarity, thoroughness, and support . . . .").

[64] Transcript of Pre-Trial Conference, *supra* note 30, at 92.

court stated that it was not sure that Letter was an accurate statement of Swiss law.[65] In terms of support, the Letter cited only two Swiss decisions, decisions that the court had previously considered and rejected.[66] As outlined above, despite the lack of judicial support in the Ambassador's Letter, the Defendants relied on it on numerous occasions, and the court repeatedly focused on the opinions of the Swiss Federal Supreme Court instead.

Second, the court addressed the inconsistency with previous Swiss government statements of Swiss law.[67] As for consistency with previous positions of the Swiss government, the court had previously ruled in *Kashef II* that Swiss law did not require, as the Ambassador's Letter asserts, "willful and substantial assistance" to the unlawful act, describing such a position as "demonstrably incompatible" with Swiss Federal Supreme Court precedent.[68] In other words, the Swiss executive

---

[65] *Id.* at 45–46.

[66] *Kashef II*, 2021 WL 603290 at *8–9 (distinguishing Swiss Federal Supreme Court *Swisscom* case); Joint Brief of Plaintiffs in Response, *supra* note 29, at 4 n.4 (citing Order Denying Motion for Order Regulating Evidentiary Burdens and Making Findings on Swiss Law, Dkt. No. 743, noting that "the issues raised by the Swiss Ambassador's letter have already been fully briefed, fully considered, and ruled upon by the Court").

[67] *Animal Sci.*, 585 U.S. at 43 ("Relevant considerations include . . . the statement's consistency with the foreign government's past positions.").

[68] Order Regulating Proceedings, *supra* note 14, at 3; *Kashef II*, 2021 WL 603290 at *4 (discussing Swiss Federal Supreme Court *Shooting Contest* case).

branch is taking a position that is inconsistent with the Swiss judicial branch.[69] In the post-trial hearing, the court determined again that the position of the Swiss Ambassador was inconsistent with the position of the Swiss Federal Supreme Court with respect to burden of proof.[70]

Third, the court addressed the role and authority of the official offering the statement.[71] At the September 3, 2025 hearing following the Letter, the court described the Letter as "[e]xtraordinary," and inquired as to "[w]ho wrote it," to which defense counsel responded, "the Swiss government."[72] The court said nothing further at the hearing in this regard, but the court followed the Swiss Federal Supreme Court as a more authoritative source for Swiss law than the Swiss executive branch.[73]

Fourth, the court addressed the context and purpose of the Letter.[74] The Ambassador's Letter does not explain the timing or reasons for the Letter submitted

---

[69] *Animal Sci.*, 585 U.S. at 43 ("Relevant considerations include . . . the statement's consistency with the foreign government's past positions.").

[70] Transcript of Oral Argument, *supra* note 53, at 55–58.

[71] *Animal Sci.*, 585 U.S. at 43. ("Relevant considerations include . . . the role and authority of the entity or official offering the statement . . . .").

[72] Transcript of Pre-Trial Conference, *supra* note 30, at 92.

[73] Opinion and Order as to Burden of Proof, *supra* note 50, at 6 ("The holding of the Swiss Federal Supreme Court will be the basis of my instructions to the jury on all elements of the case.").

[74] *Animal Sci.*, 585 U.S. at 43. ("Relevant considerations include the statement's . . . context and purpose . . . .").

just one week prior to trial, stating only that "I respectfully request that you carefully consider the points raised in this letter as you evaluate issues of Swiss law."[75] The timing on the eve of trial provides inferential evidence of the Letter's purpose: the statement was produced in litigation on the eve of trial in order to influence the outcome of the case. The Defendant's brief is explicit as to how the court should respond to the Letter: the case must be dismissed, or failing that, the court should formulate jury instructions consistent with the views expressed by the Swiss government.[76] The court responded to both of those requests. The September 3, 2025 hearing and the court's order confirm that the court considered the Ambassador's Letter in formulating the jury instructions and entertained, and rejected as untimely, the Defendant's request for a dispositive ruling dismissing the case in light of the Ambassador's Letter. Likewise, the court also considered the Ambassador's Letter in the post-trial briefings and hearing, and concluded that the Letter was not an accurate statement of Swiss law and that the request to revisit dispositive questions presented in the Letter was untimely.[77]

---

[75] Order Regulating Proceedings, *supra* note 14, at 4.

[76] BNPP's Response, *supra* note 29, at 1 ("This Court must ensure it takes the Swiss Government's authoritative views into account in formulating its proposed jury instructions, should it proceed to trial."); *id.* at 4 ("This case must be dismissed now or on BNPP's Rule 50 motion. If the Court does not dismiss the case in full now, it must formulate proposed jury instructions consistent with the views expressed by the Swiss Government.").

[77] Transcript of Oral Argument, *supra* note 53, at 54–58.

Fifth, the court addressed the transparency of the foreign legal system.[78] Throughout the entire proceedings, the record is replete with references to Swiss case law and to various opinions as to Swiss law. Over the course of several years, the court managed discovery and considered the opinions of Swiss legal experts as to the meaning and interpretation of relevant Swiss legal authority. Although the court does not expressly discuss the matter, the record confirms that the court considered the Swiss legal system to be transparent and worthy of respect. Indeed, it chose to apply Swiss law instead of Sudanese, New York or U.S. federal law as the applicable law,[79] and consistently relied on published decisions of the Swiss Federal Supreme Court.[80] To this extent, the court followed the request of the Ambassador's Letter that "the established laws of Switzerland and practice of the Swiss Courts in the interpretation of the laws in question should be carefully considered."[81]

These factors support the conclusion that the court respectfully considered the Swiss Ambassador's Letter and gave it the appropriate weight it deserved. As the D.C. Circuit put it, the failure to provide appropriate citations to the country's case

---

[78] *Animal Sci.*, 585 U.S. at 43 ("Relevant considerations include . . . the transparency of the foreign legal system . . . .").

[79] *Kashef I*, 442 F. Supp. 3d 809, 818–24 (S.D.N.Y. 2020).

[80] *See, e.g.*, *Kashef II*, No. 16 Civ. 3228 (AJN), 2021 WL 603290, at *4, *7, *8–9 (S.D.N.Y. Feb. 16, 2021).

[81] Order Regulating Proceedings, *supra* note 14, at 3.

law combined with the fact that the statement was clearly prepared in response to this litigation at the very late hour, should lead the court to conclude that the government statement does not accurately reflect how that country's courts would interpret the relevant law.[82] The court gave the Ambassador's Letter respectful consideration; it just gave greater consideration to the opinions of the Swiss Federal Supreme Court. As the Supreme Court emphasized, "the appropriate weight in each case will depend upon the circumstances; a federal court is neither bound to adopt the foreign government's characterization nor required to ignore other relevant materials."[83] That is what occurred in this case.

Surprisingly, the United States *amicus curiae* filing in favor of BNP Paribas argues that the district court did not consider any of these factors.[84] The United States completely ignores the September 3, 2025 hearing in which the district court addressed the *Animal Science* factors. At that hearing the parties and the district court discussed the legal points raised in the Ambassador's Letter on numerous occasions.[85] As noted above, it was at this hearing that the district court finalized the jury instructions and entertained the position of defense counsel summarizing the

---

[82] *See In re Grand Jury Subpoena*, 912 F.3d 623, 634 (D.C. Cir. 2019).

[83] *Animal Sci.*, 585 U.S. at 43.

[84] Brief of United States as *Amicus Curiae*, *Kashef v. BNP Paribas S.A.*, No. 26-341 (2d Cir. May 29, 2026), Dkt. No. 63.1.

[85] Transcript of Pre-Trial Conference, *supra* note 30, at 45–48, 67–75, 96–98.

position of the Ambassador's Letter and their own Swiss law experts. The district court agreed with some of defense counsel's arguments on jury instructions and disagreed with others.[86] The district court also explained why the defense counsel's reliance on the Ambassador's legal position with respect to primary and accomplice liability could not be raised at such a late stage in the proceedings.[87] Defense counsel even conceded that they were too late to file such a motion raising the accomplice liability issue presented by the Ambassador's Letter.[88]

These distortions aside, the United States *amicus* brief is highly irregular. Years after the United States successfully prosecuted BNP Paribas criminally, established a website for the consideration of a victim compensation fund from the $9 billion BNP Paribas forfeiture,[89] and remained silent throughout the decade of this civil case, it suddenly now files an *amicus* brief in support of BNP Paribas, the client of the U.S. Attorney's former law firm.[90] The undisclosed relationship between the

---

[86] *Id.* at 67–75.

[87] *Id.* at 96–98.

[88] *Id.* at 98 ("Mr. Martinez: 'We're late. We're too late to file a 12(c) motion, your Honor.' The Court: 'Right.'").

[89] Press Release, *U.S. Attorney's Office for the Southern District of New York Recovers Nearly $12 Billion in Forfeitures and Civil Actions During Two-year Period from January 1, 2014 Through December 31, 2015,* (Apr. 21, 2016).

[90] Jay Clayton was a partner at Sullivan & Cromwell LLP until his appointment as United States Attorney for the Southern District of New York on April 22, 2025. Sullivan & Cromwell LLP represented BNP Paribas in this litigation while Clayton was a partner at the firm. Counsel of record for BNP Paribas, Jeffrey Wall, a recent partner of Gibson Dunn LLP was a partner with Jay

U.S. Attorney and the Defendant should rebut any presumption of regularity and provide objective grounds to question whether the filing of the *amicus* brief reflected impartial governmental judgment.

**Conclusion**

The question presented is whether the district court misconstrued Swiss law.[91] To the extent the Ambassador's Letter filed on the eve of trial is relevant, it is with respect to the questions of Swiss law before the district court at that time—the drafting of jury instructions and the Defendants' Rule 50 motion for judgment as a matter of law. The Ambassador's Letter did not provide new substantive content—it simply seconded the legal opinions of the Defendants' Swiss legal experts. The court's approach was measured—in drafting the jury instructions it agreed with Defendants with respect to several points regarding Swiss law, and disagreed with

---

Clayton at Sullivan & Cromwell LLP. In light of Clayton's recent affiliation with Sullivan & Cromwell LLP, the firm's representation of BNP Paribas during his tenure there, Wall's professional and personal relationship with Clayton, and the timing of the *amicus* filing advancing BNP Paribas's position, a reasonable observer could question Clayton's impartiality. 5 C.F.R. § 2635.502(a). This appearance of partiality should be a factor in the weight this Court gives the United States' *amicus* brief.

[91] *See* Brief of Defendant-Appellant BNP Paribas, *supra* note 15, at 6 (the alleged issue is "[w]hether the district court misconstrued Swiss law by: (a) treating a liability-*apportionment* statute as the basis for liability; (b) imposing joint-and-several liability on BNPP under the liability-apportionment statute even though the alleged primary tortfeasor (Sudan) could not be found liable under Swiss law; and (c) erroneously instructing the jury on the burden of proof and the elements of Plaintiffs' claims").

others.[92] It rejected the Rule 50 motion because Defendants raised the same dispositive arguments they had raised before that the court had already rejected.

The same process of determining Swiss law is now before this Court. In determining the content of Swiss law, this Court will entertain *de novo* review of the district court's determinations. Consistent with Rule 44.1, it should consider all relevant materials in the record, including the Ambassador's brief Letter, the lengthy expert reports, and the various opinions of the Swiss Federal Supreme Court. It would be unsurprising if this Court agreed with the district court and gave the decisions of the Swiss Federal Supreme Court the greatest weight in determining the content of Swiss law. In the analogous state law context, the Supreme Court has stated that judicial branch decisions should have greater weight over executive branch statements.[93] The same should apply to foreign law interpretations.

Dated: August 28, 2026

Respectfully submitted,



Michael J. Bazyler

[92] Transcript of Pre-Trial Conference, *supra* note 30, at 67–75.
[93] *Animal Sci.*, 585 U.S. at 44.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 6,803 words in this brief.

Michael J. Bazyler